**Stephen Carl SMITH, Appellant**

v.

**Mary DENEVE, Appellee.**

**No. 05–07–01407–CV.**

Court of Appeals of Texas, Dallas.

May 29, 2009.

Stephen C. Smith, Pompano Beach, FL, for Appellant.

Robert D. Hemphill, Dallas, for Appellee.

Before Justices FITZGERALD, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice FITZGERALD.

Stephen Carl Smith sued Mary Deneve for divorce. After Deneve denied that they were married, Smith amended his pleadings to add claims for constructive trust, partnership/joint venture, quantum meruit, and resulting trust. The trial court granted summary judgment in favor of Deneve and granted her an award of attorneys' fees. Smith appeals, raising eight issues. We affirm in part and reverse in part.

### I. BACKGROUND

#### A. Facts

The following facts are supported by the summary-judgment evidence. Smith and Deneve began dating in 1991 and began living together that same year. They never formally married. In 1998, they moved into a house on Linkwood Drive in Dallas. Deneve took title to the Linkwood house in her name only. In 2003, they acquired a boat. Again, Deneve took title to the boat in her name only. In 2005, the couple separated.

#### B. Procedural history

Smith filed an original petition for divorce in November 2005. Deneve filed a verified denial in which she denied under oath that there was an existing marriage between the parties.

Deneve filed a motion for summary judgment on traditional and no-evidence grounds. Smith filed a first amended petition for divorce in which he asserted additional claims for partition of property according to an implied cohabitation agreement, constructive trust, partnership/joint venture, and quantum meruit. Smith also filed a response to Deneve's first motion for summary judgment. The trial court heard Deneve's first motion for summary judgment and eventually signed an order rendering partial summary judgment that no marriage ever existed between Smith and Deneve.

Deneve filed a second motion for summary judgment. Smith filed a second amended petition in which he added a claim for resulting trust, and he also filed a response to the motion. The trial court denied Deneve's second motion for summary judgment. Deneve also specially excepted to Smith's claims based on an implied cohabitation agreement. The trial court sustained her special exceptions and later struck Smith's cohabitation-agreement claim when Smith failed to amend. Smith has not appealed the striking of that claim.

Deneve filed a third motion for summary judgment. Smith filed a response, and Deneve filed objections to his evidence. The trial judge heard the motion on July 3, 2007. The judge held an evidentiary hearing on the issue of Deneve's attorneys' fees on July 10. On July 20, the judge signed a final summary judgment in which she (1) sustained Deneve's objections to Smith's summary-judgment evidence; (2) ordered Smith to take nothing on his claims, (3) and awarded Deneve over $42,000 in attorneys' fees, plus additional attorneys' fees in the event Smith appealed. Smith filed a motion for new trial, which the trial court denied. This appeal ensued.

## II. STANDARD OF REVIEW

We review a summary judgment de novo. *Mid–Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex.2007). When we review a traditional summary judgment in favor of a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve every doubt in favor of the nonmovant. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994).

When we review a no-evidence summary judgment, we inquire whether the nonmovant adduced sufficient evidence to raise a genuine issue of fact on the challenged elements. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.). If the evidence is so weak as to create only a mere surmise or suspicion of a fact's existence, or if it is so slight as to make any inference a guess, the evidence is in legal effect "no evidence," and summary judgment is proper.

*Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004). On the other hand, a no-evidence motion for summary judgment should be denied if the evidence is sufficient for reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex.2008) (per curiam).

## III. ANALYSIS OF SMITH'S CLAIMS

We consider the propriety of the summary judgment as to each of Smith's claims.

### A. Informal marriage

█ In his seventh issue, Smith argues that the trial court erroneously granted summary judgment against him on the issue of the existence of an informal or common-law marriage. The elements of an informal marriage are that a man and woman (1) agreed to be married, (2) lived together in this State as husband and wife after the agreement, and (3) in this State represented to others that they were married. TEX. FAM.CODE ANN. § 2.401(a)(2) (Vernon 2006). Deneve argued that the evidence conclusively disproved the element of agreement to be married, and she also challenged all three elements on no-evidence grounds. We will consider the no-evidence points first.

We conclude that Smith adduced no evidence of the third element of informal marriage, that he and Deneve represented to others in Texas that they were married. This element is also described as "holding out to the public." *Eris v. Phares*, 39 S.W.3d 708, 714–15 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). Smith testified in his summary-judgment affidavit, "After Mary accepted my ring, we began to introduce each other as husband and wife." He also testified, "When we have been out together, we have been introduced by others as husband and wife and neither Mary

or I would tell anyone that we were not husband and wife." Smith also relies on certain contracts in which he and Deneve were listed as husband and wife.

■ The element of holding out requires more than occasional references to each other as "wife" and "husband." *Flores v. Flores*, 847 S.W.2d 648, 653 (Tex. App.-Waco 1993, writ denied); *see also Ex parte Threet*, 160 Tex. 482, 485–86, 333 S.W.2d 361, 363–64 (1960) (no evidence of holding out where woman introduced man as her husband to two or three friends, told a few others that she was married, and wore wedding band given to her by man); *Danna v. Danna*, No. 05–05–00472–CV, 2006 WL 785621, at *1 (Tex.App.-Dallas March 29, 2006, no pet.) (mem.op.) ("[I]solated references to each other as husband and wife alone do not establish a holding out[.]"). Moreover, a "couple's reputation in the community as being married is a significant factor in determining the holding out element." *Danna*, 2006 WL 785621, at *1. In *Danna*, for example, the proponent of the informal marriage adduced evidence of four occasions on which she or her putative husband introduced each other as husband or wife. 2006 WL 785621, at *1. She also introduced an AARP enrollment form that showed her as his wife and that he admitted signing. *Id.* at *2. We held that this evidence was insufficient to raise a fact issue on the element of holding out: "Taken in a light most favorable to Alicia, the evidence simply did not demonstrate that she and Philip both consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married." *Id.* Accordingly, we affirmed the trial court's directed verdict that there was no informal marriage. *Id.*

Smith did not adduce evidence of holding out sufficient to raise a genuine fact issue. First, the contracts that listed Smith and Deneve as husband and wife do not aid his cause because there is no evidence that Deneve caused those representations to be made, or was even aware of them. The third element of informal marriage requires both parties to have represented themselves to be married. TEX. FAM.CODE ANN. § 2.401(a)(2). Also, there is no evidence that anyone in the community ever saw those contractual representations. *See Danna*, 2006 WL 785621, at *2. The only other evidence of holding out is Smith's affidavit testimony that he and Deneve introduced each other as husband and wife, and that they never objected to such introductions by others. He adduced no evidence as to whether these events were common or rare. He adduced no evidence that he and Deneve had any reputation in the community for being married. It would be sheer speculation for us to infer from Smith's evidence that he and Deneve sufficiently held themselves out to the community as married to satisfy the third element. In *Danna*, we held that evidence of four instances of holding out over a span of two or more years was insufficient to raise a genuine fact issue. *Id.* at *1–2. In this case, we have no reasonable basis for concluding that Smith and Deneve held themselves out to the community as married more often than the parties in *Danna*.

We conclude that Smith adduced no evidence of the essential element of holding out, and so we affirm the trial court's summary judgment on the issue of informal marriage. We overrule Smith's seventh issue on appeal.

## B. Constructive trust

■ In his third issue, Smith argues that the trial court erroneously granted summary judgment against him on the issue of the existence of a constructive trust. A constructive trust is an equitable

remedy imposed to prevent unjust enrichment. *Troxel v. Bishop,* 201 S.W.3d 290, 297 (Tex.App.-Dallas 2006, no pet.). To obtain a constructive trust, the proponent must prove (1) actual fraud or breach of a special trust or fiduciary relationship, (2) unjust enrichment of the wrongdoer, and (3) tracing to an identifiable res. *Id.* Deneve sought a traditional summary judgment on this claim on several grounds. She also sought a no-evidence summary-judgment by attacking all of the elements of a constructive trust. We consider the no-evidence points first.

The first element is actual fraud or breach of a fiduciary duty. Smith argues only that Deneve breached a fiduciary duty she owed to him. He contends that a fiduciary relationship arose based on his and Deneve's "moral, social, personal, domestic and family relationship." More concretely, he relies on his evidence that he and Deneve lived together for fourteen years, opened a joint bank account with right of survivorship in May 2000, shared an auto insurance policy, and jointly contributed to their bills and living expenses. Deneve argues that this evidence is insufficient to raise a genuine fact issue on the existence of a fiduciary relationship.

There are two types of fiduciary relationships: formal fiduciary relationships that arise as a matter of law, such as partnerships and principal-agent relationships, and informal fiduciary relationships or "confidential relationships" that may arise from moral, social, domestic, or personal relationships. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 593–94 (Tex.1992). But a fiduciary relationship is an extraordinary one and will not be created lightly. *In re Estate of Kuykendall,* 206 S.W.3d 766, 771 (Tex.App.-Texarkana 2006, no pet.). The mere fact that one party to a relationship subjectively trusts the other does not indicate the existence of a fiduciary relationship. *Id.; see also Crim Truck & Tractor Co.,* 823 S.W.2d at 595 ("[M]ere subjective trust alone is not enough to transform arms-length dealing into a fiduciary relationship."). A person is justified in believing another to be his fiduciary "only where he or she is accustomed to being guided by the judgment and advice of the other party, and there exists a long association in a business relationship, as well as a personal friendship." *Pabich v. Kellar,* 71 S.W.3d 500, 505 (Tex.App.-Fort Worth 2002, pet. denied). The marital relationship is a fiduciary one, *Solares v. Solares,* 232 S.W.3d 873, 881 (Tex.App.-Dallas 2007, no pet.), but we have already concluded that Smith and Deneve were not spouses. The question is whether the evidence of their longstanding cohabitation, their joint bank account, and their sharing of expenses is sufficient to raise a fact issue as to the existence of an informal fiduciary relationship.

Smith relies on *In re Marriage of Braddock,* 64 S.W.3d 581 (Tex.App.-Texarkana 2001, no pet.). In that case, a married couple divorced, but five years later the man moved in with the woman. *Id.* at 586. For about ten months during this cohabitation period, the man was unemployed. *Id.* The woman allowed the man to write checks on her bank account, and it eventually became a joint checking account. *Id.* The woman entrusted the man with her financial affairs. *Id.* The court of appeals held that these facts constituted some evidence of a fiduciary relationship between the man and the woman. *Id.* In response, Deneve relies on the case of *Hubbard v. Shankle,* in which the court of appeals held that a romantic relationship of three months' duration constituted no evidence of a fiduciary relationship between the two persons involved. 138

S.W.3d 474, 479, 483 (Tex.App.-Fort Worth 2004, pet. denied).

We conclude that Smith failed to raise a genuine issue of material fact as to the existence of a fiduciary relationship. Although he adduced evidence of a long-standing personal relationship with Deneve, he adduced no evidence that he was accustomed to being guided by Deneve's judgment and advice, that she ever gave him financial advice, or that she otherwise assumed the role of a fiduciary towards him. *See Pabich,* 71 S.W.3d at 505 (plaintiff must show that he was accustomed to being guided by the judgment and advice of the alleged fiduciary). The evidence that they both contributed towards household expenses does not show that he placed any peculiar degree of trust in Deneve. That evidence is equally consistent with a mere agreement to share living expenses. Likewise, Smith's evidence that he opened a checking account with Deneve with right of survivorship may show that he placed some degree of subjective trust in Deneve, but such trust alone does not show the existence of a fiduciary relationship. *Estate of Kuykendall,* 206 S.W.3d at 771. The evidence simply does not show that Smith entrusted Deneve with his financial affairs, as occurred in *Braddock.* There is no evidence that Smith and Deneve had an informal fiduciary relationship, so there is necessarily no evidence that Deneve breached any fiduciary duty to Smith.

We overrule Smith's third issue.

## C. Resulting trust

In his fourth issue, Smith argues that the trial court erroneously granted summary judgment against him on the issue of the existence of a resulting trust. A resulting trust arises by operation of law when title is conveyed to one person but all or part of the purchase price is paid by another. *Cohrs v. Scott,* 161 Tex. 111, 117, 338 S.W.2d 127, 130 (1960). The trust arises out of the transaction and must arise at the time title passes. *Id.* Smith pleaded that he was entitled to a resulting trust against the house on Linkwood and against the boat. In her motion for summary judgment, Deneve argued that her evidence proved that Smith did not pay any part of the purchase price of the house. As to the boat, she said only that she "has stated her willingness to relinquish it to [Smith] if he will agree to assume the purchase money indebtedness."

As to the Linkwood house, Deneve filed her own affidavit in which she testified as follows:

As reflected by the documents attached hereto as Exhibits A through H, I purchased the real property located at 10104 Linkwood, Dallas, Texas, (hereinafter the "Linkwood Property") in January, 1998, in my name using my own credit and funds paid by me. The consideration for the purchase was obtained from (1) loan proceeds from a mortgage from Countrywide Home Loans, Inc., executed in my name only without obligating Petitioner Stephen Carl Smith and (2) a down payment paid by me from funds I earned. None of the consideration or credit applied to the purchase of the Linkwood Property was contributed by Petitioner Stephen Carl Smith. Specifically, Petitioner did not contribute any part of the down payment nor did he pay any part of the subsequent monthly payments on the purchase money mortgage which I executed in connection with the purchase of the Linkwood Property.

Smith relies on his own affidavit to raise a fact issue on the question of whether he contributed any consideration towards the

down payment on the Linkwood house. He testified as follows:

> We decided to put an offer on the [Linkwood] house and we moved to 10104 Linkwood, Dallas, Texas in June or July 1997. We lived in that house together until December 15, 2005, when I was forced to move out.
>
> I won $5,000.00 on a scratch-off lottery ticket and gave the ticket to Mary and told her to use the money as a down payment for the house.

We conclude that Deneve's affidavit defeats Smith's resulting-trust claim to the house as a matter of law, and Smith's affidavit does not raise a genuine fact issue. Deneve's affidavit conclusively establishes that Smith did not contribute any of the purchase money used at the inception of title. Although Smith's affidavit tends to show that he gave Deneve a lottery ticket worth $5,000 and told her to use the money as the down payment on the house, he cites no evidence that she actually did so. The trial court correctly granted summary judgment for Deneve on Smith's claim for a resulting trust against the Linkwood house.

■■■ As to the boat, however, Deneve adduced no evidence to show that Smith contributed none of the purchase price. Indeed, we cannot even reasonably construe her motion as requesting summary judgment as to Smith's claim for a resulting trust against the boat. Deneve did not show herself entitled to summary judgment on this part of Smith's resulting-trust claim.

We sustain Smith's fourth issue in part and reverse the trial court's summary judgment as to Smith's claim for a resulting trust against the boat. We overrule the remainder of Smith's fourth issue.

## D. Partnership and joint venture

■■■ In his fifth issue, Smith argues that the trial court erroneously granted summary judgment against him on his claim that he and Deneve formed a partnership or joint venture that acquired the property they accumulated during their years of cohabitation. He focuses his argument on the Linkwood house. By statute, factors indicating that persons have formed a partnership include the following: (1) the receipt or a right to receive a share of the business's profits, (2) an expression of intent to be partners in the business, (3) participation or the right to participate in control of the business, (4) sharing or agreeing to share in the business's losses or liabilities, and (5) contributing or agreeing to contribute money or property to the business. TEX.REV.CIV. STAT. ANN. art. 6132b–2.03(a) (Vernon Supp.2008). A joint venture has four elements: (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise. *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex.1981). Generally, a joint venture is governed by the rules applicable to partnerships. *Lawler v. Dallas Statler–Hilton Joint Venture*, 793 S.W.2d 27, 33 (Tex.App.-Dallas 1990, writ denied). Deneve raised traditional and no-evidence challenges to every factor pertaining to partnerships and also to those same factors as they relate to joint ventures.[1] We consider the no-evidence points first.

---

1. In her appellee's brief, Deneve adds an argument that the purchase of the house did not constitute a "business" at all. She did not make this argument in her motion for summary judgment, so we express no opinion about it. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993) ("A motion [for summary judgment] must stand or fall on the grounds expressly presented in the motion.").

Receipt of or the right to receive profits is the first factor in determining whether a partnership exists, and an agreement to share profits is also an element of a joint venture. In support of this factor, Smith relies on his own affidavit. He stated that the decision to buy the Linkwood house was a joint decision by him and Deneve. He further stated, "Our plan was to fix up the house, sell it for a profit, and move to a lake house." He swore that he and Deneve referred to the house as "our" house, and that he wrote checks to Deneve to help pay the mortgage. And he stated, "During the many years Mary [Deneve] and I were together, we combined our efforts and earnings to build for our future. We have both worked very hard for everything we have together and have always intended to share anything we accumulated together." Smith adduced no evidence that he ever actually received any profits from the Linkwood house. His evidence also raises no more than a suspicion or a surmise that he and Deneve agreed that he would have a right to receive profits in the event of a sale. The reference to a "plan" to sell the house for a profit does not show that he had any right to a share of the profits, or an interest in any lake house to be purchased with those profits. Casual references to the house as "our" house do not show that Smith had a right to any profits. The fact that he contributed to the mortgage payments for the house is equally consistent with an arrangement that Deneve would own the house and he would help her pay the mortgage as consideration for his being allowed to live there. His vague assertion that he and Deneve "always intended to share anything" they accumulated does not show that he had an ownership interest in any property that she accumulated. Smith adduced no evidence of this factor.

The second partnership factor is an expression of intent to be partners. Smith points to no evidence that he or Deneve ever used the term "partners" or that Deneve ever considered him to be a co-owner of the house through a partnership. *See* Tex.Rev.Civ. Stat. Ann. art. 6032b–2.02(a) (describing "partnership" as "an association of two or more persons to carry on a business for profit as owners"). His evidence that the parties referred to the house as "our" house is equally consistent with a mere acknowledgment that they were living there together. His evidence that they planned to sell the house and use the proceeds to buy a lake house tends to show that Deneve agreed with his intention and desire to do so, but this does not rise to the level of agreement or intent that Smith was her partner in owning the house. The evidence does not raise a genuine fact issue on this factor.

The third partnership factor, and the fourth joint-venture element, is mutual control of or a mutual right to control the business. Smith adduced no evidence of this factor. For this factor, Smith relies on the same evidence described above, plus the evidence that he lived in the Linkwood house and substantially renovated that property while the parties lived there. All this evidence is equally consistent with the conclusion that Deneve owned the house and merely permitted Smith to live there and to renovate the premises. There is no evidence that Smith had a right to control "the business," i.e., the ownership and hypothetical future sale of the house. We conclude that Smith's evidence does not raise a genuine fact issue that the parties had a mutual right of control over the business.

The fourth partnership factor, and the third joint-venture element, is an agreement to share losses. Smith does not refer us to any evidence tending to

show that the parties had any agreement to share losses. The evidence does not raise a genuine fact issue as to an agreement to share losses.

■■■ The fifth partnership factor is contributing or agreeing to contribute money to the venture. This appears to be much the same as the first element of a joint venture, which is a community of interest in the venture. Smith swore in his affidavit that he gave Deneve checks towards the mortgage payments on the Linkwood house, and he included copies of some checks he wrote to Deneve in his summary-judgment evidence. But this evidence is equally consistent with the conclusion that Deneve owned the house and Smith merely paid rent.

For the foregoing reasons, we conclude that Deneve was entitled to a no-evidence summary judgment on Smith's claims of partnership and joint venture as to the Linkwood house. The only other item of property he mentions in his brief is the boat, and he does not brief the partnership factors or joint-venture elements as to that item. Accordingly, we do not consider the possibility of a partnership or joint venture as to the boat or any other property. We overrule Smith's fifth issue.

## E. Quantum meruit

■■■ In his sixth issue, Smith argues that the trial court erroneously granted summary judgment against him on his quantum meruit claim. To recover on a claim for quantum meruit, a plaintiff must show (1) he rendered valuable services, (2) for the defendant, (3) the defendant accepted his services, and (4) he rendered the services under circumstances as would reasonably notify the defendant that he expected to be paid. *Johnston v. Kruse,* 261 S.W.3d 895, 901 (Tex.App.-Dallas 2008, no pet.). Deneve challenged the fourth element of quantum meruit on traditional and no-evidence grounds. We address the no-evidence grounds first.

Smith argues that his and Deneve's conversations about the Linkwood house reasonably notified Deneve that he expected to be paid for the work he did and the money he spent on the house. Specifically, his evidence shows that they discussed the purchase price and the work that needed to be done on the house before the purchase. They jointly decided that an offer should be made on the house. He did substantial work on the house and spent money on materials used in the renovations. His remodeling work increased the value of the house. They planned to fix up the house, sell it for a profit, and use the proceeds to buy a lake house. Deneve argues that none of these facts tends to show that she was reasonably notified that Smith expected to be paid. She points out that "where people are living together as one household, services performed for each other are presumed to be gratuitous, and an express contract for remuneration must be shown or that circumstances existed showing a reasonable and proper expectation that there would be compensation." *Coons–Andersen v. Andersen,* 104 S.W.3d 630, 638 (Tex.App.-Dallas 2003, no pet.).

We agree with Deneve that Smith presented no evidence that the circumstances reasonably notified Deneve that Smith expected to be paid for anything he did or any amounts he spent. Indeed, Smith's evidence tends to show that he did not expect to be paid for his services and expenditures on materials—rather, he expected that he and Deneve would stay together and eventually move into a house on a lake. Instead, the evidence shows that the relationship soured. There is no evidence that the parties gave any thought to this possibility, nor is there any evidence of any facts or circumstances that would have put Deneve on notice that

Smith expected to be paid the value of his services if the relationship ended. The evidence shows nothing more than that the parties lived together, expected to stay together, and mutually contributed to the household expenses during the relationship.

We overrule Smith's sixth issue.

### F. Attorney's fees

In his eighth issue, Smith argues that the trial court erred by awarding Deneve her attorney's fees. He asserts that there is no legal basis for an award of fees to Deneve, and alternatively that the award must be reversed because Deneve did not segregate her fees.

#### 1. Deneve's pleadings

In his first argument under this issue, Smith contends that Deneve is not entitled to recover her attorneys' fees because she specifically pleaded for recovery of fees under Texas Rule of Civil Procedure 13 and did not prove the elements of that rule. Deneve argues that her pleadings were general enough to allow her to rely on any legal basis for the recovery of fees presented in the record. She does not attempt to defend her award of fees on Rule 13 grounds.

■■■ "[W]hen a party pleads a specific ground for recovery of attorney's fees, the party is limited to that ground and cannot recover attorney's fees on another, un-pleaded ground." *Kreighbaum v. Lester,* No. 05–06–01333–CV, 2007 WL 1829729, at *2 (Tex.App.-Dallas June 27, 2007, no pet.) (mem.op.). Thus, we must decide whether Deneve specifically pleaded Rule 13 as the only ground for the recovery of fees. After stating her defenses, Deneve pleaded as follows:

#### V. COUNTERCLAIM

15. Petitioner's suit is groundless and brought for the purpose of harassment or groundless and interposed for improper purposes, including but not limited to causing unnecessary delay and needless increase in the cost of litigation. Respondent is thereby entitled to recover her attorneys fees and costs of litigation incurred in the defense of this case.

### VI. *ATTORNEY'S FEES, EXPENSES, COSTS, AND INTEREST*

■■■ 16. It was necessary for Respondent to secure the services of an attorney to prepare and defend this suit. Judgment for attorney's fees, expenses, and costs through final judgment after appeal should be granted against Petitioner and in favor of Respondent for the use and benefit of Respondent's attorney; or in the alternative, Respondent requests that reasonable attorney's fees, expenses, and costs through final judgment after appeal be taxed as costs to be ordered paid directly to Respondent's attorney, who may enforce the order in the attorney's own name. Respondent requests post-judgment interest as allowed by law.

We conclude that Deneve's pleadings for attorneys' fees are sufficiently general to distinguish this case from *Kreighbaum* and to permit her to argue any available legal basis to support the award of attorneys' fees.

In *Kreighbaum,* the plaintiff sued the defendants for breach of contract, fraud, and violations of the DTPA. *Id.* at *1. The defendants asserted a counterclaim that the plaintiff's DTPA claims were groundless and that they were therefore entitled to recover their attorney's fees under "Section 17.50(c) of the Texas Business & Commerce Code." *Id.* at *2. The plaintiff nonsuited his contract claim dur-

ing trial. *Id.* at *1. The parties agreed to submit attorney's fees issues to the court after the jury rendered its verdict. *Id.* The jury found in favor of the defendants, but when the defendants filed their motion for attorney's fees they relied solely on a fee-shifting clause in the parties' contract and not on the DTPA, as they had pleaded. *Id.* The trial court denied them any recovery of fees, and we affirmed, holding that the defendants were limited to the specific ground for recovery of fees that they had pleaded. *Id.* at *3. Because the defendants did not prove their right to fees under the specific ground pleaded—the DTPA—the trial court properly denied them recovery of their fees. *Id.*

We distinguish *Kreighbaum* for two reasons. First, unlike the *Kreighbaum* defendants, Deneve did not cite any specific rule or statute as her sole ground for the recovery of fees. Smith urges that paragraph 15 of Deneve's pleading is clearly a reference to Rule 13, but it does not precisely track the provisions of that rule. Moreover, the allegations in paragraph 15 also resemble other fee-shifting provisions, such as section 9.011 of the civil practice and remedies code. *Compare* TEX.R. CIV. P. 13 *with* TEX. CIV. PRAC. & REM.CODE ANN. § 9.011 (Vernon 2002). We conclude that paragraph 15 does not amount to a "specific ground" for the recovery of attorneys' fees like the *Kreighbaum* defendants' pleading of "Section 17.50(c) of the Texas Business & Commerce Code." Second, Deneve also pleaded paragraph 16, in which she separately and broadly asserted that she had to hire a lawyer to defend the suit and that Smith should have to pay for it. There was apparently no such broad pleading in *Kreighbaum.* We conclude that Deneve's pleadings were sufficiently

general to allow her to rely on any applicable provisions of law to support an award of attorneys' fees.

## 2. Section 6.708 of the family code

■ Next, Smith argues that Deneve cannot rely on section 6.708 of the family code to support the award of attorneys' fees because the trial court ruled that no informal marriage existed. Alternatively, he argues that the award must be reversed because Deneve did not segregate her attorneys' fees incurred litigating this issue from her other fees incurred in this case. Deneve argues that section 6.708 authorized the entire award and that segregation was unnecessary.

The statute provides that "[i]n a suit for dissolution of a marriage, the court as it considers reasonable may award costs to a party." TEX. FAM.CODE ANN. § 6.708(a) (Vernon 2006). If a statute's meaning is unambiguous, we enforce it according to its plain meaning. *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex. 2003). The plain meaning of section 6.708(a) is that it applies to any "suit" in which the plaintiff prays for "dissolution of a marriage." Thus, we conclude that section 6.708(a) applies to this suit because Smith sought the dissolution of a marriage, even though the trial court ultimately ruled that no marriage actually existed.

Smith contends that a court cannot award fees under section 6.708(a) unless a marriage relationship is proved, citing *State ex rel. Mattox v. Buentello,* 800 S.W.2d 320, 328 (Tex.App.-Corpus Christi 1990, no writ).[2] We reject Smith's argument. The *Mattox* court did hold that "[b]efore the court can award attorney's fees in a divorce action, ... the existence of a marriage relationship must be prov-

---

**2.** Smith does not argue that the "costs" available under this statute do not include attor- neys' fees.

en." *Id.* But the court of appeals did not rely on the statute in effect at the time, section 3.65, in support of this rule. Instead it relied solely on footnote one in *Ex parte Threet.* The *Threet* court held that the trial court cannot order support in a divorce case if there is no evidence of a valid marriage. 160 Tex. at 485, 333 S.W.2d at 363 ("A valid marriage is a prerequisite to a support order in an action for divorce."). In a footnote, the *Threet* court stated the rule more broadly, " 'The existence of a marriage relationship is, *in the absence of statute,* a condition precedent to an allowance of alimony, counsel fees, and suit money pendente lite in actions by the wife for divorce, alimony, and separate maintenance.' " 160 Tex. at 485 n. 1, 333 S.W.2d 361 (quoting 11 A.L.R.2d 1040, 1042) (emphasis added), 333 S.W.2d at 364 n. 1. The *Mattox* court relied on the general rule stated in footnote one of *Threet* without considering whether section 3.65 amounted to a statutory exception to that general rule. *Mattox,* 800 S.W.2d at 328. In this case, we have reviewed the language of section 6.708, and it authorizes an award of costs without expressly requiring that a marriage be proved as a prerequisite for the award. We see no reason to engraft such a requirement onto the statute. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 659 (Tex.1995) ("[C]ourts should not insert words in a statute except to give effect to clear legislative intent."). We conclude that section 6.708 applies to this case.

 Smith argues in the alternative that section 6.708 authorizes the recovery only of those fees incurred in defense of the claim for dissolution of the marriage, and that Deneve did not segregate those fees from her other fees incurred in this case. Deneve argues that segregation was not required because section 6.708 author-izes the recovery of all attorneys' fees incurred in a "suit" for dissolution of a marriage, and not just those fees incurred in defense of a "claim" for dissolution of marriage. Deneve's argument is supported by *Frazier v. Frazier,* No. 13–01–00004–CV, 2003 WL 22069790 (Tex.App.-Corpus Christi Sept. 4, 2003, no pet.) (mem.op.). In that case, a wife sued a husband for divorce, the husband added a third-party claim against another party, and the trial court ultimately awarded attorneys' fees to both the wife and the third-party defendant. *Id.* at *1. The court of appeals affirmed the award of fees to the third-party defendant based on section 6.708, even though there was no marriage-dissolution claim as between the husband and the third-party defendant. *Id.* at *3. We agree with *Frazier.* The language of section 6.708 is very broad, and we construe it to give the trial court discretion to award a party any or all of its costs incurred in a suit for dissolution of a marriage, even if the suit includes other claims as well. Thus, Deneve was not required to segregate her attorneys' fees as a prerequisite to recovery.

We overrule Smith's eighth issue on appeal.

### IV. OBJECTIONS TO SUMMARY-JUDGMENT EVIDENCE

In his first issue, Smith argues that the trial court erred by sustaining Deneve's objections to his summary-judgment response and evidence. He makes several distinct arguments under this general issue. In his second issue, he argues that the trial court erred by granting summary judgment because it erred by sustaining Deneve's evidentiary objections.

Deneve argues that any error is harmless because the summary judgment was proper even if we consider all of the excluded evidence. We agree. In the fore-

going analysis, we have considered all of the evidence relied on by Smith in this appeal, and we have concluded that the trial court correctly granted summary judgment as to every claim properly attacked by Deneve in her summary-judgment motions. Any error in sustaining Deneve's objections to Smith's evidence was harmless. We overrule Smith's first two issues on appeal.

## V. CONCLUSION

We reverse the trial court's judgment to the extent it grants summary judgment on Smith's claim for a resulting trust as to the boat. In all other respects, we affirm the trial court's judgment. We remand the case for further proceedings consistent with this opinion.