**STATON HOLDINGS, INC. d/b/a Staton Wholesale d/b/a Staton Corporate & Casual, Appellant,**

v.

**TATUM, L.L.C. formerly known as Tatum Controller Group Solutions, L.L.C., Appellee.**

No. 05–10–00047–CV.

Court of Appeals of Texas, Dallas.

July 15, 2011.

Christopher M. McCaffrey, Dallas, for Appellant.

John Emil Garda, Hughes & Luce, Christopher D. Kratovil, K & L Gates LLP, Brent E. Basden, Kirkpatrick & Lockhart Preston Gates Ellis LLP, Dallas, for Appellee.

Before Justices FITZGERALD, LANG-MIERS, and FILLMORE.

## OPINION

Opinion By Justice FITZGERALD.

Appellee Tatum, L.L.C. provided executive search services to appellant Staton Holdings, Inc. Staton hired a candidate presented by Tatum. Staton later sued Tatum on several legal theories, alleging that the candidate resigned after about nine months and caused Staton to incur certain losses or expenses. The trial court rendered a take-nothing summary judgment against Staton, and Staton appealed. We reverse and remand as to Staton's claims for breach of warranty and otherwise affirm the judgment.

### I. BACKGROUND

#### A. Staton's allegations

Staton alleged the following facts. Staton is a wholesale distributor of sportswear products. Tatum is a company that provides executive search services. In early November 2006, Tatum sent Staton a letter outlining the terms on which Tatum would provide its services to Staton. In early December 2006, Tatum presented a candidate named Ronald Pyke to Staton for the position of chief financial officer. Staton hired Pyke in January 2007 and paid Tatum its requested fee. During his employment with Staton, Pyke either fired or induced a longstanding Staton employee to quit and hired two unnecessary employees for Staton. Pyke resigned after working for Staton only about nine months, and Staton and Pyke then engaged in litigation related to his employment.

During the Staton–Pyke litigation, it came to Staton's attention that Pyke's immediately preceding employer had fired him because of severe conflict among Pyke, management, and employees working under Pyke. Tatum had failed to make inquiry of Pyke's prior employer and had failed to disclose these facts to Staton.

#### B. Procedural history

Staton sued Tatum on five theories of liability: breach of contract, breach of express and implied warranties, negligence, gross negligence, and fraud. Staton sought to recover the placement fee it had paid to Tatum, the salary it had paid to Pyke, other economic losses allegedly caused by Pyke, punitive damages, and the attorneys' fees Staton had incurred both in its litigation with Pyke and in the instant lawsuit. Tatum answered and counterclaimed for declaratory judgment and breach of contract.

Tatum moved for summary judgment on Staton's claims under Texas Rule of Civil Procedure 166a(c). First, Tatum argued that all of Staton's claims were barred by a waiver provision in the parties' letter

agreement.[1] The waiver provides as follows:

> [Tatum] shall have no ongoing responsibility or liability for the acts or omissions of the recruited candidate. [Staton] will not hold [Tatum] liable for any such acts or omissions of the recruited candidate, and [Staton] shall be deemed to have waived all future claims against [Tatum] relating to the recruited candidate including, without limitation, any claim for negligent referral, hiring or supervision, assault, battery, invasion of privacy, slander, libel, tortuous [sic] interference with a breach of contract [sic], negligent misrepresentation, fraud, [or] negligent or intentional infliction of emotional distress.

In the alternative, Tatum argued that Staton's claims for negligence, gross negligence, and fraud were barred by the economic-loss rule. Staton filed a response to the summary-judgment motion. The trial court granted Tatum's motion and ordered that Staton take nothing on its claims. Staton filed a motion for new trial, which the trial court denied.

Staton appealed. After we questioned our jurisdiction over the appeal, Tatum nonsuited its counterclaims and removed any question as to the finality of the judgment.

## II. STANDARD OF REVIEW

■ We review a summary judgment do novo. *Smith v. Deneve,* 285 S.W.3d 904, 909 (Tex.App.-Dallas 2009, no pet.). When we review a traditional summary judgment in favor of a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.

1997); *Smith,* 285 S.W.3d at 909. We must take evidence favorable to the non-movant as true, and we must indulge every reasonable inference and resolve every doubt in favor of the nonmovant. *Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994); *Smith,* 285 S.W.3d at 909.

## III. ANALYSIS

Staton raises one issue on appeal, asserting that the trial court erred by granting summary judgment. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970). Under its single issue, Staton argues that the release provision relied on by Tatum does not satisfy the fair-notice requirements of Texas law, is ambiguous, or otherwise does not encompass all of Staton's claims. Staton also asserts that the economic-loss rule does not bar its claims for negligence, gross negligence, and fraud.

### A. Economic-loss rule

■ We address the economic-loss rule first. Tatum sought summary judgment on Staton's claims for negligence, gross negligence, and fraud on the ground that those claims are barred by the economic-loss rule. When a party's acts breach a contract and the only alleged injury is economic loss to the subject of the contract itself, the action sounds in contract alone. *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 495 (Tex.1991); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986); *see also Mickens v. Longhorn DFW Moving, Inc.,* 264 S.W.3d 875, 879 (Tex.App.-Dallas 2008, pet. denied) ("When a negligence claim is made alleging the breach of the very duties encompassed in a contract between

---

1. Although Staton did not sign the letter agreement, Staton does not dispute that the letter sets forth the terms of its agreement with Tatum.

the parties, the action is for breach of contract and not tort.") (internal quotations omitted). Although Staton's appellate brief includes some discussion of the economic-loss rule, its briefing consists only of an abstract discussion of the law. Staton does not explain why its negligence, gross negligence, and fraud claims are not barred by the economic-loss rule on the particular facts of this case. *See In re Estate of Miller*, 243 S.W.3d 831, 840 (Tex. App.-Dallas 2008, no pet.) (holding issue waived because appellant did not analyze legal authority and made "no suggested application of it to the facts"). Nor does Staton support its argument with any citations to the record as required by Texas Rule of Appellate Procedure 38.1(i). *See In re B.A.B.*, 124 S.W.3d 417, 420 (Tex. App.-Dallas 2004, no pet.) ("The failure to adequately brief an issue, either by failing to specifically argue and analyze one's position or provide authorities and record citations, waives any error on appeal.").

We conclude that Staton has effectively failed to challenge Tatum's invocation of the economic-loss rule, and so we will not disturb the summary judgment with respect to Staton's claims for negligence, gross negligence, and fraud. *See Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 875 (Tex.App.-Dallas 2005, no pet.) ("[A] reviewing court will affirm the summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which the summary judgment could have been granted."); *see also Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex.App.-Dallas 2009, pet. denied) (stating that a general issue challenging summary judgment must be supported by argument "negating all possible grounds upon which summary judgment could have been granted").

## B. Release

Next we consider Staton's contention that the trial court erred by concluding that the release bars Staton's claims for breach of contract and breach of warranty as a matter of law. As to breach of warranty, Staton argues that the release does not bar the claim because it does not specifically release that theory of liability. As to breach of contract, Staton argues that the release provision is ambiguous, thus raising a material fact issue as to the parties' intent.

### 1. The express-negligence test and breach of warranty

As to its breach-of-warranty claim, Staton argues that the release is ineffective because it does not specifically state that breach-of-warranty claims are released. In other words, Staton is essentially asking us to extend the express-negligence test to claims for breach of warranty. Tatum, on the other hand, argues that we should apply cases approving of broad-form releases such as *Keck, Mahin & Cate v. National Union Fire Insurance Co. of Pittsburgh, PA*, 20 S.W.3d 692 (Tex.2000). Under these cases, which concern releases of claims arising at least in part from past conduct, a broad release will be enforced and need not "identify each potential cause of action relating to the release's subject matter." *Id.* at 698. Thus, the question presented is whether the express-negligence test should be extended to prospective releases of claims for breach of warranty in service transactions.

■ We begin by reviewing Texas's express-negligence jurisprudence. Under Texas law, certain kinds of contractual provisions that call for an extraordinary shifting of risk between the parties are subject to the fair-notice doctrine. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993). In *Dresser Industries*, the Texas Supreme Court held that a release of liability for

future negligence is enforceable only if it comports with both prongs of the fair-notice doctrine: the conspicuousness requirement and the express-negligence test. *Id.* at 509. Under the express-negligence test, a release of future negligence is enforceable only if the intent to grant such a release is expressed in specific terms within the four corners of the contract. *Id.* at 508; *see also Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 708 (Tex.1987) (adopting the express-negligence test in the context of indemnity clauses). If a similar express-intent rule applies to breach-of-warranty claims, the release involved in this case is suspect because it does not expressly state that Staton is waiving claims for future breaches of warranty.

The Texas Supreme Court has extended the express-negligence test to some claims besides negligence. In 1994, the supreme court held that an indemnity agreement will not be construed to indemnify a party against statutorily imposed strict liability unless the agreement expressly states the parties' intent to provide for indemnification of such claims. *Houston Lighting & Power Co. v. Atchison, Topeka & Santa Fe Ry. Co.,* 890 S.W.2d 455, 458–59 (Tex. 1994). The court indicated that the same express-intent rule would apply to claims for strict products liability. *Id.* at 458. At least one court has extended *HL & P's* express-strict-liability test from indemnity agreements to prospective releases, based on the authority of *Dresser Industries. See S. Pac. Transp. Co. v. Voluntary Purchasing Grps., Inc.,* No. 3:94–CV–2477, 1997 WL 457510, at *8 (N.D.Tex. Aug. 7, 1997) ("[T]he 'express intent' rule of *Houston Lighting & Power* applies to prospective releases of statutory strict liability, as well as to indemnity agreements.").

The outer limits of *HL & P* have not been defined. In an unpublished decision, the Austin Court of Appeals has extended *HL & P* to indemnity claims for DTPA violations, gross negligence, and bad faith. *Aetna Cas. & Sur. Co. v. Tex. Workers' Comp. Ins. Facility,* No. 03–97–00285–CV, 1998 WL 153564, at *4 (Tex.App.-Austin Apr. 2, 1998, pet. denied) (not designated for publication). Otherwise, *HL & P* has been little developed in the courts, and some opinions seem to overlook it altogether by stating that the express-intent test applies only to negligence claims. *See, e.g., English v. BGP Int'l, Inc.,* 174 S.W.3d 366, 375 (Tex.App.-Houston [14th Dist.] 2005, no pet.) ("[T]he express negligence doctrine does not apply to non-negligent actions."); *DDD Energy, Inc. v. Veritas DGC Land, Inc.,* 60 S.W.3d 880, 885 (Tex. App.-Houston [14th Dist.] 2001, no pet.) ("[T]he express negligence component of the fair notice requirements does not apply where an indemnitee is seeking indemnification from claims not based on the negligence of the indemnitee."); *see also* Ryan C. Hudson et al., *When the Extraordinary Becomes Ordinary: Is the Express Negligence Rule Under Attack in Texas?,* 60 BAYLOR L.REV. 941, 954–56 (2008) (discussing cases that have overlooked *HL & P* ). *But see AVCO Corp. v. Interstate Sw., Ltd.,* 251 S.W.3d 632, 666–67 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (recognizing that express-negligence doctrine extends to strict-liability claims). In any event, we have found no appellate decisions extending the express-intent test to breach-of-warranty claims.

In the absence of binding or clearly relevant persuasive authority, we examine the Texas Supreme Court's reasons for extending the express-negligence test to strict-liability claims in *HL & P.* First, the court reasoned that indemnification against strict-liability claims is an exception to usual business practice, just as indemnification against the indemnitee's own negligence is. 890 S.W.2d at 458. Because such indemnification is the excep-

tion, and because it involves an extraordinary shifting of risk, fairness dictates that the obligation should be specifically expressed in the agreement. *Id.* Second, the requirement of express intent will discourage drafters from attempting to conceal their true intent through ambiguity, and it will reduce the amount of litigation over ambiguous agreements. *Id.* Finally, the court concluded that the express-intent rule would advance the goal of worker safety that was the basis for the particular scheme of statutory strict liability involved in the case. *Id.* at 458–59.

After considering the reasons supporting *HL & P's* extension of the express-intent rule to strict liability, we conclude the express-intent rule applies to breach-of-warranty claims. First, the *HL & P* court emphasized that the kind of risk-shifting presented by indemnity agreements is unusual and even extraordinary when it comes to negligence and strict liability. *Id.* at 458. The *Dresser Industries* court concluded that a prospective release of negligence liability is also extraordinary. *See* 853 S.W.2d at 508–09. We think that a prospective release for breach of warranty is also an extraordinary shifting of risk that would not be expected by an ordinary consumer of services to which a warranty applies. So this factor weighs in favor of application of the express-intent rule to breach-of-warranty claims.

The supreme court's second justification for extending the express-intent requirement to strict-liability claims was the discouragement of the use of ambiguous releases. *See HL & P,* 890 S.W.2d at 458. We conclude the public policy against ambiguous releases would also be advanced by extending the express-intent requirement to breach-of-warranty claims. Finally, the last rationale for the extension of the express-intent rule in *HL & P* was the

furtherance of worker safety under a particular statute that imposed strict liability. Although this policy is not necessarily implicated by the breach-of-warranty claims involved in this particular case, other breach-of-warranty cases may involve personal-safety issues. We conclude the third factor does not weigh against extension of the express-intent requirement to breach-of-warranty claims, and, on the whole, it probably supports that extension.

■■■ For the foregoing reasons, we hold that the express-intent requirement of *Ethyl, Dresser Industries,* and their progeny applies to prospective releases of future breaches of warranty in service transactions. The release involved in this case does not expressly release claims for future breaches of warranty, so it does not bar Staton's breach-of-warranty claims against Tatum. *Cf. Gulf Coast Masonry, Inc. v. Owens–Illinois, Inc.,* 739 S.W.2d 239, 239–40 (Tex.1987) (per curiam) (because indemnity clause failed express-negligence test, clause was unenforceable against alleged indemnitor).

### 2. Ambiguity and breach of contract

As to its breach-of-contract claim, Staton does not argue that any kind of heightened express-intent requirement applies to the release. Staton argues only that the release is ambiguous under ordinary contract principles, and that the ambiguity creates a genuine fact issue as to whether the parties intended the release to apply to Staton's breach-of-contract claim. In particular, Staton focuses on the following language: "[Staton] shall be deemed to have waived all future claims against [Tatum] *relating to the recruited candidate* including, without limitation, ... *tortuous [sic] interference with a breach of contract* [sic]...." (Emphases added.) Staton argues that the first emphasized phrase is ambiguous because it is unclear whether the release is intended to apply to Staton's

conduct or the conduct of the recruited candidate. And Staton argues that the second emphasized phrase is ambiguous because it is so poorly drafted that it is incomprehensible.

■ We conclude that the release is not ambiguous as applied to this case. A contract is ambiguous if it is susceptible to two or more reasonable interpretations. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). Staton released "all future claims against [Tatum] relating to the recruited candidate." Thus, any claim having a significant relationship to "the recruited candidate" was released by the agreement. *See Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 898 (Tex.App.-Austin 2006, no pet.) (stating that a claim "relates to" a contract if it has a significant relationship with or "touch[es]" matters covered by the contract). Staton's breach-of-contract claim, as presented in its appellate brief, was that Tatum breached its promise to perform a background check on Pyke. This claim has an obvious and significant relationship with Pyke, so it is covered by the release. The remainder of the release sets forth a number of claims by way of example and "without limitation," so under the plain language of the release those examples do not narrow the broad scope of the release. Thus, even if we assume the phrase "tortuous interference with a breach of contract" is ambiguous, the release as a whole is still an unambiguous broad release of "all future claims against [Tatum] relating to the recruited candidate."

We reject Staton's sole argument that the release does not bar its breach-of-contract claim.

## IV. CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court with re-

spect to Staton's breach-of-warranty claims and remand for further proceedings as to those claims. In all other respects, we affirm the judgment of the trial court.