AFFIRM; and Opinion Filed July 7, 2014.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-13-01008-CV

### IN THE ESTATE OF JOSEPH T. MAREK II, DECEASED

On Appeal from the Probate Court No. 3
Dallas County, Texas
Trial Court Cause No. PR-11-304-3

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Brown
Opinion by Justice Brown

After Joseph T. Marek II died intestate, his sister, Patricia Diane Barfield, filed an application to declare heirship identifying herself and another brother as the decedent's only heirs. Debora Anderson intervened, claiming that she and Marek had an informal marriage. After a trial before the court, the trial court determined that Anderson was Marek's surviving spouse and awarded her a share of Marek's property. In two issues on appeal, Barfield contends the evidence is legally and factually insufficient to prove two of the three elements of an informal marriage. Specifically, she contends the evidence is insufficient to show Marek and Anderson represented to others they were married and had an agreement to be married. We affirm the trial court's judgment.

Marek was admitted to Doctors Hospital in Dallas on December 13, 2010 and died there the following day. He did not have a will. In her application to declare heirship, Barfield claimed that she and her other brother, Michael Marek, were Marek's only heirs and that they

were each entitled to a 50% share of the decedent's property. Anderson intervened, asserting that she and Marek had an informal marriage and seeking to be declared an heir. The trial court appointed an attorney ad litem to represent the unknown heirs of Marek. In the ad litem's opinion, the application to declare heirship correctly listed Marek's heirs as well as their respective shares of the decedent's property. The ad litem determined Anderson was not married to Marek because they did not represent to others they were married.

The case was tried before the court. Danny Barfield, Barfield's husband and an attorney, testified he had known the decedent since about 1965. Danny testified that Marek had been married to a woman named Mitsy, and they divorced in the 1980s. According to Danny, after the divorce, the decedent never remarried. Danny saw Marek four to six times a year, and they talked on the phone about that often as well. Sometime between 2006 and 2008, Marek called Danny to ask about charges Anderson had made on Marek's credit card. Danny told Marek that if he was married to Anderson, he was responsible for any essentials she charged. Marek told Danny he was not married to Anderson. Danny testified that neither Marek nor Anderson ever held themselves out as being husband and wife. Danny never heard either of them tell anyone else they were married. Danny did observe that Anderson appeared to be living with Marek at his house.

Danny admitted he was not very close to Marek. He testified in his deposition that he had "very seldom" hung out with the decedent and his friends and not in the last fifteen or twenty years. Danny had no personal knowledge of the relationship between Anderson and Marek, only what Marek told him. Danny had never had a conversation with Anderson while Marek was living, and he had only seen her three times. He did not think Anderson was good for Marek.

Dennis Koustambardis testified that he had known the Marek family for many years. He spoke with Marek at a funeral and Marek told him that, after Mitsy, he was not going to get

-2-

married again. Marek never told Koustambardis he was married to Anderson. Koustambardis had never met Anderson and did not see Marek often during the last ten years of Marek's life. He had no personal knowledge about the relationship between Marek and Anderson.

Patricia Diane Barfield testified she met Anderson at a family reunion in 2003 or 2004. Marek introduced Anderson to Barfield, but did not refer to her as his wife. She saw Anderson only two more times after that. Neither Marek nor Anderson ever represented to Barfield that they were husband and wife. Barfield said her brother changed after he met Anderson, and she did not think the changes were positive. In the last three years of Marek's life, Barfield had only five or six conversations with him.

On the day before Marek died, Barfield received a phone call from Anderson's daughter informing her that her brother was in the hospital. Barfield spoke on the phone with a doctor and was informed Marek was in very serious condition. The doctor told Barfield that Marek's wife was making medical decisions for him. Barfield told the doctor her brother did not have a wife. Barfield came to Dallas that night to visit Marek in the ICU. Marek was unable to respond to Barfield. Barfield and her husband left the hospital at some point to go to the police. Danny Barfield talked about Anderson with the police.

Michael Marek, Marek's younger brother, testified that in the last few years, his relationship with his brother had become a little strained and they didn't see each other as much as they had previously. They still talked on the phone periodically and saw each other periodically. Michael went to Marek's house three or four times a year. Marek never told Michael he was married to Anderson. Michael met Anderson on several occasions, and she never represented that she was married to Marek.

Debora Anderson testified that she had lived in Marek's house since 2000, except for a time from November 2003 to March 2004 when she and Marek were separated. When asked

−3−

how she and Marek agreed to be married, Anderson stated, "It was after our brief separation from November to March, and I came back from a game room with him to the house and he asked me, 'Are you here for good, Babe?' And I said, 'Yes.'" She further stated that she and Marek had both been married before and "could be each other's husband and wife without having a formal wedding." Anderson testified she and Marek included one another in decision making most of the time. Anderson was not employed between 2004 and the time of Marek's death. Marek supported her financially, and she took care of the house. Anderson and Marek were "home bodies" and rarely went out. They did go to game rooms, which Anderson described as places where illegal gambling occurred. Marek would bring Anderson in to the game rooms and say, "This is my wife," or "This is Debora." Anderson never stated to her family members that she was Marek's wife or that he was her husband because "there was no need for that." Also, she admitted she never told Marek's family that they were married, but explained that none of them ever asked. Anderson never denied to anyone at the hospital that she was Marek's wife. Anderson remembered referring to herself as "Mrs. Marek" when Wilson's Heating and Air Conditioning came out to work at their house.

When the attorneys for both sides finished questioning Anderson, the trial court asked her if there was anyone from the game room who could testify she had told them she was Marek's wife. Anderson said, "No, sir." She explained, "Sir, these game rooms, they don't last, people don't last in it. So there's - - they change all the time."

Renee' Anderson, Anderson's daughter, testified that she met Marek in 2000 and that her mother had lived in the same house in Dallas with Marek since then. Renee' visited their house "quite often," which she described as "[m]ostly every week." She also lived with them for two years. She testified that she understood her mother and Marek were married because Marek once

-4-

told her when he was doing his taxes that he was "filing as married." Renee' never saw Marek interact with his brother or sister.

Jerome Figurelli testified by deposition that he thought he was Marek's best friend. He spent a great deal of time at Marek's house with Marek and Anderson. Figurelli testified Marek and Anderson behaved as husband and wife. Marek never used the word "wife" to refer to Anderson in Figurelli's presence. Nor did he ever hear Anderson refer to Marek as her husband. Figurelli testified that Marek did refer to Anderson as his "ole' lady." Figurelli felt sure that they became husband and wife because "everything they did was with each other in mind." He talked about the things they did for each other, like cooking, shopping, and laundry, and described it as "everything married couples do for each other."

The parties introduced various documents into evidence at trial. Anderson's exhibits one through six were Internal Revenue Service records indicating that, for the years 2004-2009, Marek and Anderson were spouses and their tax filing status was "married filing jointly." Another of Anderson's exhibits was a business record from GEICO indicating Anderson was listed as Marek's spouse and as an additional driver on an automobile insurance policy issued by GEICO. The policy was in effect from November 3, 2007 to June 1, 2011.

Anderson also presented as evidence three hospital forms she signed. When Marek was admitted to the hospital for treatment, Anderson signed a consent form. The form had a space to indicate her relationship to the patient, but she left it blank. She also signed a form about the conditions of service and a patient signature form.

Four exhibits were offered into evidence by both sides. Barfield presented the same three hospital documents as appellant. And both sides offered a handwritten note written by Michael Marek at the hospital stating, "Renee Anderson and Debora Anderson are not related to Joseph T. Marek II and cannot receive any information or make any decision concerning my brother

–5–

Joseph T. Marek II." The note is signed and dated the day after Marek's death and also included a photocopy of Michael's driver's license.

In addition, Barfield's exhibit six is handwritten progress notes from Doctors Hospital. On December 14, 2010, the notes include the following entry by the doctor, "Guarded prognosis - [spoke to girlfriend (states not his wife) and brother]." The bracketed portion is specifically labelled as a "late entry" made on December 15, the day after Marek's death. At trial, Danny Barfield testified that the doctor had told him Anderson stated she was not Marek's wife. Danny admitted in his deposition that he wanted to make sure there was an entry in the hospital records to reflect that Anderson was not Marek's spouse. Danny was not present during any conversations the doctor had with Anderson. Barfield also introduced a checking account statement in the name of "Joseph Marek II." And she presented Anderson's discovery responses in which she admitted she never told several named individuals, including Barfield, Barfield's husband, and Michael Marek, she was married to Marek.

The trial court determined that Anderson was Marek's surviving spouse. The court awarded her 50% of Marek's real property and 100% of his personal property. The court awarded Marek's brother and sister each 25% of the real property. In its findings of fact, the trial court found that Marek and Anderson entered into an agreement to be married and were married by June 2004. The court further found that after their agreement to be married, they lived together in Texas as husband and wife and represented to others that they were married. This appeal followed.

In her first issue, Barfield contends the evidence is legally and factually insufficient to support the court's finding that Marek and Anderson represented to others that they were married. To prove the existence of an informal marriage in Texas, one must show three things: 1) the parties agreed to be married, 2) after the agreement they lived together in Texas as

–6–

husband and wife, and 3) they represented to others that they were married. TEX. FAM. CODE ANN. § 2.401(a)(2) (West 2006); *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.); *Lewis v. Anderson*, 173 S.W.3d 556, 559 (Tex. App.—Dallas 2005, pet. denied). Spoken words are not necessary to establish representation as husband and wife. *Winfield v. Renfro*, 821 S.W.2d 640, 648 (Tex. App.—Houston [1st Dist.] 1991, writ denied). "Holding out" may be established by the parties' conduct and actions. *Id.* The element of "holding out" requires more than occasional references to each other as husband and wife. *Smith*, 285 S.W.3d at 910.

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454 (Tex. App.— Dallas 2012, pet. denied). Therefore, we review a trial court's finding under the same sufficiency standards we use when determining if sufficient evidence exists to support an answer to a jury question. *Id.* In reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict, disregarding all contrary evidence a reasonable factfinder could have reasonably disbelieved. *Id.* In reviewing a factual sufficiency challenge, we consider and weigh all of the evidence in support of and contrary to the finding and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

Anderson testified that she and Marek didn't go many places or meet many new people, but Marek would introduce her as his wife in the game rooms they went to together. Anderson identified herself as "Mrs. Marek" when a repair company came out to work at their house. IRS records indicated that, for the years 2004-2009, Marek and Anderson were spouses and filed joint tax returns. Marek's automobile insurance policy, in effect at the time of his death, listed Anderson as his spouse. Further, Marek's best friend understood that Marek and Anderson were

married based on their conduct and actions. Based on this evidence, we conclude the evidence is legally sufficient to support the court's finding that Marek and Anderson represented to others they were married.

Turning to the contrary evidence, Marek's two siblings, as well as his brother-in-law and a family friend, all testified that Marek and Anderson never represented that they were husband and wife. Danny Barfield testified that Marek told him over the phone sometime between 2006 and 2008 that he was not married to Anderson. The trial court, as judge of the credibility of the witnesses, was free to discredit this evidence, especially since these witnesses were not close with the decedent in the last years of his life and had little, if any, personal knowledge of the nature of the relationship.

Barfield relies heavily in her brief on evidence that right before Marek's death, Anderson denied to Marek's doctor that she was his wife. While the hospital records include a note by the doctor added after Marek's death indicating that Anderson stated she was not Marek's wife, this evidence is not conclusive. Anderson testified she did not deny to anyone at the hospital that she was Marek's wife. Barfield had a phone conversation with the doctor in which he referred to Anderson as Marek's wife, suggesting Anderson made such a representation to him. Further, there was evidence that Danny Barfield wanted the hospital records to show Anderson was not Marek's wife. Although the record is not entirely clear on this issue, the record suggests Danny Barfield, or his wife or brother-in-law, took some action to bring about doctor's late entry. Again, the trial court was free to resolve any conflicts in the evidence in favor of Anderson. We conclude the evidence is factually sufficient to support the court's finding that Marek and Anderson represented to others they were married. Appellant's first issue is without merit.

In her second issue, Barfield contends the evidence is legally and factually insufficient to support the court's finding that Marek and Anderson had an agreement to be married. To

–8–

establish an agreement to be married, the evidence must show the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife. *Small v. McMaster*, 352 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Winfield*, 821 S.W.2d at 645. Direct evidence of an agreement to be married is not required; the agreement may be proved by circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). Proof of cohabitation and representations to others that the couple is married may constitute circumstantial evidence of an agreement to be married. *Id.*

When asked how she and Marek agreed to be married, Anderson stated, "It was after our brief separation from November to March, and I came back from a game room with him to the house and he asked me, 'Are you here for good, Babe?' And I said, 'Yes.'" Barfield asserts this is the only evidence of the couple's agreement to be married and that it is not specific enough to show anything more than an agreement to cohabitate. While this statement alone is insufficient as direct evidence of the couple's agreement to be married, direct evidence of an agreement to be married was not required. The circumstantial evidence showed the couple's agreement to be married. The statement above reflects the parties' intent to have a permanent relationship. It is undisputed they lived together for ten years, with one short separation. The testimony from Anderson and Figurelli, who saw the couple often and described himself as Marek's best friend, showed that Anderson and Marek behaved as husband and wife. And, as discussed in issue one, there was evidence they represented to others, including the IRS for six years, that they were married. We conclude the evidence is legally sufficient to support the court's finding that Marek and Anderson agreed to be married. Further, after considering Barfield's evidence disputing that the couple was married, we cannot conclude the trial court's finding of an agreement to be married was contrary to the overwhelming weight of the evidence. Appellant's second issue is without merit.

We affirm the trial court's judgment.



/Ada Brown/
ADA BROWN
JUSTICE

131008F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE ESTATE OF JOSEPH T. MAREK II, DECEASED

No. 05-13-01008-CV

On Appeal from the Probate Court No. 3, Dallas County, Texas
Trial Court Cause No. PR-11-304-3.
Opinion delivered by Justice Brown. Justices Lang and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that Debora Anderson recover her costs of this appeal from Patricia Diane Barfield.

Judgment entered this 7th day of July, 2014.