

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00212-CV

---

CHARLES FRED MESHELL                           APPELLANT

V.

KATHERINE ANTOINETTE LIPPI                    APPELLEE

----------

## FROM THE 415TH DISTRICT COURT OF PARKER COUNTY
## TRIAL COURT NO. CV14-1368

----------

## MEMORANDUM OPINION[1]

----------

In three issues, Appellant Charles Fred Meshell challenges the trial court's finding that no informal or common law marriage existed between Appellee Katherine Antoinette Lippi and Meshell. Because the trial court's finding that no

---

[1]*See* Tex. R. App. P. 47.4.

informal marriage existed was not against the great weight and preponderance of the evidence, we affirm the trial court's judgment.

**Statement of Facts**

Meshell and Lippi began a relationship in 2005, while he was separated from but not divorced from his then wife. Lippi owned a number of rental properties, and Meshell began helping her manage the properties.

Meshell testified that prior to his divorce, he and Lippi moved in together. Lippi (who is from Hungary and whose first language is not English) testified that they never lived together. She acknowledged, however, that she had previously testified in an eviction proceeding that they lived together "for a temporary time" while he was married. She later explained that they did not live together, but he would routinely spend the night with her at her home. She stated that at some point, Meshell lived in a triplex that contained the office and her family unit but that he lived in his own separate unit, not in the same unit with her.

Meshell testified that they had a joint bank account; checks admitted into evidence show both parties' names. Lippi acknowledged that two of her accounts were joint accounts with Meshell; she testified that "[she] put his name on there [so she could] pay him" for his work on the properties because he did not want to accept checks.

Meshell testified that in 2005, before his divorce, Lippi presented him with a Common Law Partner Agreement. Lippi testified that she had not signed that document and had not seen it before these trial proceedings.

Meshell testified that Lippi gave him 2.5 acres of land on which to build a residence for the two of them and Lippi's children. Lippi testified that she did not give him the land and that she held a mortgage on the property.

Meshell began construction on the property in 2006. He divorced his wife in March 2006. Lippi paid the filing fee for the divorce. She testified that she did so because she owed him money for work he had done.

Meshell testified that in July 2006, Lippi presented him with an Informal Marriage Agreement. The document stated that nine properties owned by Lippi would be community property. Lippi testified that she and Meshell broke up in 2006 and that she did not sign the document.

On May 22, 2007, Lippi signed a notarized document stating that Meshell was her husband and authorizing him to act on her behalf regarding her rental properties. Lippi testified that she did so because Meshell asked her to do it and told her that it was the only way he would take care of the properties. She testified that for some cities, owners can do work on their own property, but anyone else must have a license to do work on the property. Lippi had previously signed a similar document in December 2005, before Meshell's divorce. She did so again in November 2010.

Meshell testified that he gave Lippi a wedding ring that she wore. Lippi testified that although he gave her an engagement ring before they broke up, he did not give her a wedding ring.

3

In 2009, Lippi and Meshell filled out applications for life insurance, each listing the other as a spouse. Lippi testified that this was done at Meshell's request and that, at the time, she did not know what the word "spouse" meant.

Lippi also listed Meshell on her car insurance, and both insurance cards listed the same P.O. Box as the address. Lippi testified that she also listed other employees who drove the company car on her car insurance.

In February 2014, Lippi moved in with her elderly aunt and uncle to help take care of them. In May 2014, Meshell injured himself doing work on Lippi's property and was unable to work, including doing work on the rental properties, for six months. At some point, Meshell accused Lippi of impropriety with respect to her aunt and uncle's bank account. In July 2014, Lippi gave notice to her renters that Meshell was not and never had been her husband and that they should not give him their rental payments. Meshell filed for divorce from Lippi on September 15, 2014.

A forensic document examiner testified for Meshell and stated that, in his opinion, the signature on the Informal Marriage Agreement was Lippi's signature. A document examiner also testified for Lippi. That document examiner testified that she saw indications that Lippi's signature on the document might not be genuine and that, with respect to Lippi's signature on the 2005 Common Law Partner Agreement, "the evidence very strongly show[ed] that the signature [was] highly probably . . . some type of duplicate" of Lippi's signature on another document.

4

The trial court rendered judgment that no formal or informal marriage existed between the parties and denied all further relief.

In its findings of fact, the trial court found that there was no agreement between Meshell and Lippi to enter into an informal marriage, they did not live together as husband and wife, they did not consistently conduct themselves as husband and wife in public, they did not have a reputation in the community for being married, and the three elements required for an informal marriage never existed at the same time.

**Discussion**

Section 2.401 of the family code provides in relevant part that an informal marriage may be proved by evidence that the parties agreed to be married, lived together in Texas as a married couple, and represented to others in Texas that they were married.[2] All three elements must coexist for an informal marriage to occur.[3] A couple's agreement to be married may be established by direct or circumstantial evidence.[4] The element of representing to others that they were married, or "holding out," requires more than occasional references to each other

---

[2]Tex. Fam. Code Ann. § 2.401(a)(2) (West 2006).

[3]*Garcia v. Garcia*, No. 02-11-00276-CV, 2012 WL 3115763, at *3 (Tex. App.—Fort Worth Aug. 2, 2012, no pet.) (mem. op.).

[4]*Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993).

5

as husband and wife.[5]   The proponent of the informal marriage must prove all three elements by a preponderance of the evidence.[6]

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards.[7]   When the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for sufficiency of the evidence.[8]

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and

---

[5]*Smith v. Deneve*, 285 S.W.3d 904, 909–10 (Tex. App.—Dallas 2009, no pet.).

[6]*Farrell v. Farrell*, 459 S.W.3d 114, 117 (Tex. App.—El Paso 2015, no pet.); *Small v. McMaster*, 352 S.W.3d 280, 282–83 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

[7]*Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009).

[8]*Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *Allison v. Conglomerate Gas II, L.P.*, No. 02-13-00205-CV, 2015 WL 5106448, at *6 (Tex. App.—Fort Worth Aug. 31, 2015, no pet.) (mem. op.).

6

a new trial ordered.[9]  When conducting a factual sufficiency review, a court of appeals must not merely substitute its judgment for that of the trier of fact.[10]  The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony.[11]

In his three issues, Meshell challenges the trial court's findings that there was no agreement, no holding out, and no cohabitation.  Meshell offered some evidence on all three elements.  For example, he offered evidence that he and Lippi had lived together (cohabitation), that Lippi had signed the Informal Marriage Agreement (agreement to be married), and that she had signed insurance forms and notarized documents referring to him as her husband (holding out).  But in addition to the evidence Meshell offered, the trial court also heard opposing evidence indicating that none of the three elements were satisfied.  Lippi put on evidence that

- she and Meshell had not married and had not lived together as husband and wife;

- she added him to her bank accounts so that she could pay him for work he did on her rental properties because he did not want to be paid by check;

---

[9]*Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

[10]*Golden Eagle Archery*, 116 S.W.3d 757, 761 (Tex. 2003).

[11]*Id.*

7

- she did not sign the Common Law Partner Agreement and had not even seen it before he filed the petition for divorce at issue;

- she did not give him land;

- she paid the filing fee for his divorce because she owed him money;

- she and Meshell broke up in 2006;

- she did not sign an Informal Marriage Agreement;

- she signed a notarized statement in 2007 stating that he was her husband and authorizing him to act on her behalf because he told her that it was the only way he would take care of the rental properties;

- she had signed such a statement in 2005 while he was still married and signed another in 2010;

- he never gave her a wedding ring;

- while she listed him as a spouse on an application for life insurance at his request, Hungarian-born Lippi did not know what that word meant;

- she named employees in addition to Meshell as drivers on her car insurance;

- in July 2014, she gave notice to her tenants that he was not and never had been her husband; and

- a document examiner testified that she saw signs that Lippi's signature on the Informal Marriage Agreement might not be genuine and that the signature on the Common Law Partner Agreement was "highly probably . . . some type of duplicate."

In short, this was a he-said, she-said case. The trial judge as trier of fact was the sole judge of the credibility of the witnesses and the weight to be given to their testimony.[12] We cannot conclude that his findings on the three elements

---

[12] *See id.*

8

of an informal marriage are against the great weight and preponderance of the evidence. The trial court therefore did not abuse its discretion by denying Meshell all relief in his live petition for divorce.[13] We overrule Meshell's second and third issues, and we overrule that part of his first issue generally challenging the trial court's finding that there was no informal marriage and specifically challenging the more specific finding that there was no agreement to be married.

In the remainder of his first issue, Meshell, relying on section 4.104 of the family code, complains that the trial court abused its discretion by not enforcing the Informal Marriage Agreement. Section 4.104 governs marital agreements.[14] We have upheld the trial court's finding that no marriage occurred here. Meshell also claims that the agreement meets the requirements of section 5.46(b). That section was repealed in 1997 and recodified in section 4.006.[15] To the extent Meshell seeks enforcement of the alleged agreement as a premarital agreement, such agreements are to be effective only upon marriage.[16] Again, we have upheld the trial court's finding that no marriage occurred here. Finally, to the

---

[13]See *Van Hoof v. Anderson*, No. 07-14-00080-CV, 2016 WL 193172, at *7 (Tex. App.—Amarillo Jan. 14, 2016, no pet.); *Garcia*, 2012 WL 3115763, at *6.

[14]Tex. Fam. Code Ann. § 4.104 (West 2006).

[15]*See id.* § 4.006.

[16]*See* Tex. Fam. Code Ann. § 4.001 (West 2006); 38 Aloysius A. Leopold, *Texas Practice Series: Marital Property and Homesteads* § 12.2 (2015); Christine Mercing, Comment, *The Uniform Premarital Agreement Act: Survey of Its Impact in Texas and Across the Nation*, 42 Baylor L. Rev. 825, 844 (1990).

extent Meshell complains that the trial court did not enforce the alleged agreement as an ordinary contract, we note that at Meshell's request, the trial court severed Meshell's claims raised in the event no marriage was found—claims based on quantum meruit, promissory estoppel, money had and received, and fraud. Meshell did not plead an ordinary breach of contract. We overrule the remainder of Meshell's first issue.

**Conclusion**

Having overruled Meshell's three issues, we affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, MEIER, and GABRIEL, JJ.

DELIVERED: May 12, 2016

10