

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00394-CV

_____

RYANN PEDONE, APPELLANT

V.

JOSHUA NELSON HARVEY, APPELLEE

On Appeal from County Court at Law Number Two
Wise County, Texas
Trial Court No. CV-15-03-220; Honorable Stephen J. Wren, Presiding

August 2, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Ryann Pedone, appeals from the trial court's order finding there was no informal marriage between her and Appellee, Joshua Nelson Harvey. By two issues raised in her original and reply brief, Ryann contends the trial court erred because (1) an informal marriage was conclusively established by undisputed evidence of the parties' representations to the federal government for eight years of filing tax returns with a status

of "married" and by involvement in business transactions as husband and wife and (2) alternatively, the trial court's failure to find an informal marriage is against the great weight and preponderance of the evidence.[1]  We affirm.

BACKGROUND

Ryann and Joshua began dating in 2003 or 2004, and on November 4, 2005, while living in Alabama, Joshua gave Ryann a ring and proposed marriage, and she accepted. Both shared an interest in horses—Ryann was a horse trainer and barrel racer and Joshua became a veterinarian in 2006.  In April 2006, they moved to Texas and began living together.

Their dream was to build a multi-million-dollar horse clinic where he would practice veterinary medicine and she would train horses.  With bank loans and financial assistance from some of Ryann's family members, they purchased property together and built the clinic.  Their respective businesses were "very intertwined" and they maintained joint bank accounts.  However, bookkeeping for each business was maintained separately.

From 2006 through 2013, Ryann and Joshua filed income tax returns prepared by accountants that reflected a filing status of "married filing jointly."  Throughout those years, their relationship was on-again-off-again due to infidelities by both parties.  They cohabitated until approximately 2013, when the relationship became irreconcilable. Several years later, in March 2015, Ryann filed for divorce.  More than two years

---

[1] Originally appealed to the Second Court of Appeals at Fort Worth, this case was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).  We are unaware of any conflict between precedent of the Second Court of Appeals and that of this court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

thereafter, the divorce proceeding was tried to the bench. The trial court signed an order finding there was no informal marriage between the parties and subsequently signed an order dismissing Ryann's suit for divorce together with all derivative claims. At Ryann's request, the trial court filed *Findings of Fact and Conclusions of Law.*

STANDARD OF REVIEW

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for sufficiency. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003).

In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that supports the verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Evidence will be found to be legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. In conducting a legal sufficiency analysis, this court must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.* The trier of fact is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. *Id.* at 819. The reviewing court may not substitute its judgment for that of the trier of fact, so long as the evidence falls within the zone of reasonable disagreement. *Id.* at 822. But if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. *Id.* A legal sufficiency challenge may only be sustained when the record discloses (a) a

3

complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (d) the evidence conclusively establishes the opposite of the vital fact in question. *Id.* at 810. Evidence does not exceed a scintilla if it is so weak as to do no more than to create a mere surmise or suspicion that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

We apply a somewhat different standard of review in a factual sufficiency evaluation. A factual sufficiency challenge requires a reviewing court to consider, examine, and weigh all the evidence in the record. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998), *cert. denied*, 525 U.S. 1017, 119 S. Ct. 541, 142 L. Ed. 2d 450 (1998). In doing so, the court no longer considers the evidence in the light most favorable to the disputed finding; instead, the court considers and weighs all the evidence and sets aside that finding only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id*. at 407. In conducting a factual sufficiency review we do not reweigh the evidence and set aside the finding merely because we feel that a different result is more appropriate. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex. 1986).

APPLICABLE LAW

An informal or common law marriage exists in Texas if the parties have either (1) executed a declaration of informal marriage pursuant to section 2.402 of the Texas Family Code or (2) agreed to be married and after the agreement they lived together in Texas as husband and wife and there represented to others in Texas that they were married. TEX.

4

FAM. CODE ANN. § 2.401(a)(1), (a)(2) (West 2006). All three elements found in the second method must be proven for an informal marriage to occur. *Garcia v. Garcia*, No. 02-11-00276-CV, 2012 Tex. App. LEXIS 6371, at *8 (Tex. App.—Fort Worth Aug. 2, 2012, no pet.) (mem. op.) (citing *Flores v. Flores*, 847 S.W.2d 648, 650 (Tex. App.—Waco 1993, writ denied) (holding that all three elements can occur at different times, but until all three occur, there is no informal marriage)).

The proponent of an informal marriage "must show the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife. *Small v. McMaster*, 352 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). An agreement to be informally married may be established by direct or circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). The testimony of one of the purported spouses constitutes some direct evidence that they agreed to be married. *Small*, 352 S.W.3d at 283. However, isolated references to a person as one's spouse are generally insufficient to show an informal marriage. *Smith v. Deneve*, 285 S.W.3d 904, 910 (Tex. App.—Dallas 2009, no pet.).

ANALYSIS

By two issues, Ryann maintains (1) the evidence is legally sufficient to conclusively establish all the elements of an informal marriage and (2) the trial court's failure to find an informal marriage is against the great weight and preponderance of the evidence. Because Ryann's issues both relate to sufficiency of the evidence, we address them simultaneously.

As the proponent of an informal marriage, Ryann had the burden of proof to establish all three elements at trial. Arguing on appeal that she met that burden, she challenges the following findings:

9. [Ryann] and [Joshua] did not agree to be married.

10. [Ryann] and [Joshua] did not agree to live together in Texas as husband and wife.

11. [Ryann] and [Joshua] did not represent to others in Texas that they were married.

12. The elements of informal marriage have not been satisfied.

She maintains there is conclusive and undisputed evidence establishing an informal marriage as a matter of law,[2] and alternatively, that the trial court's adverse findings are against the great weight and preponderance of the evidence. We disagree.

The record before us does contain conclusive evidence that Ryann and Joshua lived together in Texas beginning in 2006, establishing the cohabitation element. The two remaining elements, i.e., an agreement to be married in Texas and holding out to others that they were married, were vehemently disputed by Joshua and it is those elements that require a comprehensive analysis.

---

[2] Conclusive evidence can be viewed in only one light and a reasonable fact finder can reach only one conclusion from it. *City of Keller*, 168 S.W.3d at 814. In other words, reasonable people cannot differ in their conclusions. *Id.* at 816. "Undisputed evidence and conclusive evidence are not the same—undisputed evidence may or may not be conclusive and conclusive evidence may or may not be undisputed." *Id.* There are few instances in which disputed evidence is conclusive and many instances in which undisputed evidence is not. *Id.*

AGREEMENT TO BE MARRIED

The first and most essential element of a common law marriage is a present agreement by both parties to be married. § 2.401(a)(2); *Van Hooff v. Anderson*, No. 07-14-00080-CV, 2016 Tex. App. LEXIS 466, at *10 (Tex. App.—Amarillo Jan. 14, 2016, no pet.) (mem. op.). Although evidence of cohabitation and "holding out" may constitute some evidence of an agreement to be married; *Russell*, 865 S.W.2d at 932-33, "it is difficult to infer an agreement to be married from cohabitation in modern society." *See Assoun v. Gustafson*, 493 S.W.3d 156, 160 (Tex. App.—Dallas 2016, pet. denied) (noting that evidence of holding out must be "particularly convincing" in order to be probative of an agreement to be married). "When the circumstances are equally consistent with either of two facts, neither fact may be inferred." *City of Keller*, 168 S.W.3d at 813. In such cases, we must "view each piece of circumstantial evidence, not in isolation, but in light of all the known circumstances." *Id.* at 813-14. Drawing an inference based on meager evidence is unreasonable. *Id.* at 814 (citing Robert W. Calvert, "*No Evidence*" & "*Insufficient Evidence*" *Points of Error*, 38 TEX. L. REV. 361 (1960)). Occasional references to another as a spouse will not prove an agreement to be married. *Russell*, 865 S.W.2d at 932.

Ryann claims that she and Joshua agreed to be married when he proposed on November 4, 2005, and he gave her a custom-made ring. Ryann contends the ring was designed by Joshua to look like a wedding band. Contrary to her testimony, Joshua testified during direct examination that when he asked Ryann, "will you marry me," he intended they would marry "in the future." When asked if he and Ryann ever had a conversation in which they expressed a present agreement to be husband and wife, he

7

answered, "no."  During cross-examination, he testified that Ryann kept her maiden name because they were not married.  He also explained that Ryann wanted a ring that would not "snag on things" so he designed the ring as a band with a lower profile than a typical engagement ring.

In support of her argument that she and Joshua agreed to be married, Ryann firmly relies on eight years of income tax returns the parties filed with a status of married.[3] Joshua admitted that he signed the returns but claimed he never really read the returns or got involved because they were prepared by accountants who dealt with Ryann.  He expressly refuted that his signatures on the returns indicated an agreement to be married.

The Eastland Court of Appeals addressed a similar situation in *In re Estate of Sneed*, No. 11-16-00051-CV, 2018 Tex. App. LEXIS 2626, at *1 (Tex. App.—Eastland April 12, 2018, pet. filed May 29, 2018) (mem. op.), involving an heirship proceeding in which the trial court found that Sneed and Dana Dossey were common law married.  Sneed's mother challenged the sufficiency of the evidence to support the trial court's judgment with respect to whether Sneed and Dossey held out to others that they were married.  Similar to the appeal before us, Sneed and Dossey filed joint tax returns showing Dossey as Sneed's spouse.  *Id.* at *4.  They also had joint bank accounts, commingled assets, and purchased a farm together.  In reversing the trial court's judgment, the court found that the filing status on tax returns was not prima facie evidence of holding out; rather the returns went to the weight of the evidence to be considered.  *See id.* at *7.  *See also Leyendecker v. Uribe*, No. 04-17-00163-CV, 2018 Tex. App. LEXIS 491, at*14-15

---

[3] Only tax returns for 2008, 2009, 2010, 2011, 2012, and 2013 were admitted into evidence.  The returns from 2006 and 2007 were never found.

(Tex. App.—San Antonio Jan. 17, 2018, pet. denied) (mem. op.) (noting that representations made to governmental entities do not estop a party from later claiming in an unrelated suit the existence or non-existence of an informal marriage and those representations go to the weight of the evidence). In *In re Estate of Sneed*, the trial court also found that in purchasing the farm, Sneed was named on the deed as "a single man," a fact that directly contradicted the tax returns. 2018 Tex. App. LEXIS 2626, at *7.

Here, Ryann and Joshua signed or received numerous documents related to the purchase of the land for their clinic. A *Deed of Trust* dated May 9, 2012, for the property, a *Special Warranty Deed* dated September 19, 2014, a *Mechanic's Lien Contract* issued in connection with construction of the clinic, a *Release of Deed of Trust*, and a *Loan Policy of Title Insurance,* all of which described Ryann as "a single person" and Joshua as a "a single person." As in *In re Estate of Sneed*, these documents contradicted the tax returns.

Ryann and Joshua also signed a *Financial Statement* submitted to the bank to obtain a loan for building the clinic. The "Marital Status" portion of the statement was altered to include a hand-written notation of "Common Law Married." Ryann admitted she added the alteration and insisted that Joshua was aware of the alteration when he signed the statement. Joshua disputed that "Common Law Married" appeared on the statement when he signed it.

The bank loans notwithstanding, Ryann and Joshua needed additional financial resources to build the clinic, so Ryann and Joshua asked her father to mortgage land he owned that was intended for Ryann's brother to complete the financing. Ryann's father testified that he and Ryann's brother agreed to mortgage the land for Ryann and Joshua

9

because they believed they were married. He further testified that he would not have mortgaged his land for a mere "friend." Joshua challenged this testimony by testifying that he approached Ryann's father for financial assistance, not as Ryann's husband, but as a business associate.

Therefore, the evidence before the trial court of an agreement to be married was anything but conclusive. In support of her position, Ryann cites to *Omodele v. Adams*, No. 14-01-00999-CV, 2003 Tex. App. LEXIS 292, at *5 (Tex. App.—Houston [14th Dist.] Jan. 16, 2003, no pet.) (mem. op.), which relies on *Smith v. Smith*, 607 S.W.2d 617, 621 (Tex. Civ. App.—Waco 1980, no writ), for the proposition that an agreement to be married may be implied or inferred from evidence that establishes the elements of cohabitation and holding out to the public as husband and wife.

In that regard, we note that *Smith* was decided at a time when the Family Code provided that "the agreement of the parties to marry may be inferred" if the other two elements were proven. *See* Act of June 2, 1969, 61st Leg., R.S., ch. 888, § 1, 1969 Tex. Gen. Laws 2707, 2717 (former § 1.91(b)). In 1989, the statute was amended to delete the language that a party could infer an agreement to be married. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 369, § 9, 1989 Tex. Gen. Laws 1458, 1461. By repealing the ability to infer an agreement to be married, the Legislature tightened the rules for establishing an informal marriage and the Supreme Court interpreted the amendment to require direct or circumstantial evidence of cohabitation and holding out to prove an agreement to be married. *Russell*, 865 S.W.2d at 932-33.[4] Such circumstantial evidence

---

[4] The dissent in *Russell* argued that the majority ignored the 1989 amendment by providing that an agreement to be married could be proven by direct or circumstantial evidence. *Russell*, 865 S.W.2d at 934-935 (Gonzalez, J. dissenting).

must be "more convincing" than before the 1989 amendments to the statute. *Lewis v. Anderson*, 173 S.W.3d 556, 559 (Tex. App.—Dallas 2005, pet. denied) (citing *Russell*, 865 S.W.2d at 932). But "the circumstances of each case must be determined based upon its own facts." *Russell*, 865 S.W.2d at 932. Accordingly, we decline to apply the logic in *Omodele* which relied on statutory language that was repealed in 1989.

Although Ryann's declaration that the parties agreed to be married when Joshua proposed is some evidence of an agreement, given Joshua's adamant denials, we cannot conclude there was convincing evidence to support an agreement to be married. Therefore, for Ryann to prevail on her claim that the parties had an informal marriage, she was required to prove by convincing evidence the elements of cohabitation and that she and Joshua held out to others that they were married. Because Ryann did establish cohabitation, we must evaluate the evidence to determine whether she also established the element of holding out to others.

HOLDING OUT TO OTHERS

The element of "holding out" may be established by the conduct and actions of the parties. *Small*, 352 S.W.3d at 285. This element turns on whether the couple had a reputation in the community or public eye for being married. *Id.* "Occasional introductions as husband and wife are not sufficient to establish the element of holding out." *Lee v. Lee*, 981 S.W.2d 903, 906 (Tex. App.—Houston [1st Dist.] 1998, no pet.). "A common-law marriage is more than a contract; it is a public status." *Winfield v. Renfro*, 821 S.W.2d 640, 650 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

In addition to testimony from Ryann and Joshua, numerous witnesses testified on behalf of each party's respective position either supporting or negating the element of holding out to others that they were married. Witnesses included business associates, family members, co-workers, and clients of the clinic.

Ryann offered the testimony of two accountants to prove that she and Joshua had an informal marriage. The accountant who prepared the tax returns for 2006, 2007, and 2008, testified he believed the parties were married but confessed he had no personal relationship with them. He was referred to them by Ryann's brother when they moved to Texas. The accountant who prepared the remaining returns testified that he simply referenced the previous returns to determine Ryann and Joshua's filing status. He also had only a business relationship with them.

The banker who arranged one of the loans for the clinic testified on direct examination that he believed the parties were married. On cross-examination, he contradicted himself and answered affirmatively when asked if he assumed the parties were not married. He explained that their status was irrelevant to the loan approval process.

Ryann's father and her brother both testified that Ryann and Joshua were married. Her brother referred to Joshua as his brother-in-law. Her father testified he would not have mortgaged his property for them if they had not been married.

Ryann testified that Joshua's mother had included her in the family tree as Joshua's wife. Contrary to her testimony, Joshua's mother testified that Ryann was

included in the family tree, but only as Joshua's fiancée.[5]  She had never heard Joshua refer to Ryann as his wife.  Joshua's mother acknowledged during direct examination that Ryann made statements to her that she would not marry Joshua because of his infidelities and because she could not trust him.

Numerous co-workers from the clinic, some who had become romantically involved with either Ryann or Joshua, also offered contradictory testimony on whether Ryann and Joshua referred to themselves as husband and wife.  Several clients of the clinic testified they had never heard Ryann and Joshua refer to themselves as husband and wife.

Occasional references by Ryann and Joshua that they were husband and wife were insufficient to establish the holding-out element of an informal marriage.  Additionally, testimony from family members and witnesses with whom they shared a business relationship did not establish a reputation or public status in the community that they were husband and wife.  *See Ex parte Threet*, 160 Tex. 482, 333 S.W.2d 361, 364 (1960).

In summary, the evidence of cohabitation is sufficient to satisfy one of the three elements of an informal marriage.  However, based upon the facts before us, Ryann did not produce convincing evidence of the holding-out element of an informal marriage and resultantly, an agreement to be married was not conclusively established by direct or circumstantial evidence.

As the sole judge of the credibility of the witnesses, the trial court could reasonably have disregarded Ryann's controverted testimony regarding her claim that she and

---

[5] The family tree was not offered into evidence.

Joshua mutually agreed to be married in Texas and that they had a public reputation in the community as husband and wife. *See Fusselman v. Fusselman*, No. 09-11-00435-CV, 2013 Tex. App. LEXIS 12085, at *7 (Tex. App.—Beaumont Sept. 26, 2013, no pet.) (mem. op.). *See also McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). Under *City of Keller*, 168 S.W.3d at 822, this court cannot substitute its judgment for that of the trier of fact, and under *Pool*, 715 S.W. at 634, we may not reweigh the evidence and set aside the trial court's findings unless they are clearly wrong and unjust. Issues one and two are overruled.

CONCLUSION

Cognizant that an informal marriage may be established by direct or circumstantial evidence, in today's modern times, this court will not find an agreement to be married from evidence of cohabitation without "particularly convincing" circumstantial evidence that Ryann and Joshua had a reputation in their community as husband and wife. To do so would simply dilute the integrity of each element required to prove an informal marriage, an institution not to be entered into lightly or accidentally.

The trial court's order is affirmed.


Patrick A. Pirtle
Justice

14