# NO. 12-23-00230-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE MATTER OF THE* | § | *APPEAL FROM THE* |
| *MARRIAGE OF JOEY MILLER AND* | § | *COUNTY COURT AT LAW* |
| *CATHERINE BOLDERY, ET AL* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Joey Miller appeals the trial court's summary judgment terminating his divorce proceeding against Appellee Catherine Boldery on the ground that Miller failed to raise a fact issue regarding the existence of an informal marriage between the parties. We affirm.

## BACKGROUND

Miller and Boldery were previously in a romantic relationship for over twenty years. The parties agree that no ceremonial marriage ever occurred between them, nor did they ever file a declaration and registration of an informal marriage with the county clerk as provided in the Texas Family Code. However, on March 22, 2022, Miller filed a petition for divorce in which he claimed that he and Boldery "were married on or about December 25, 2001" and "continue to live as spouses." In her answer, Boldery denied ever being formally or informally married to Miller. Subsequently, on Miller's motion, the trial court agreed to bifurcate the trial of the matter, first establishing whether an informal marriage existed between the parties (and if so, the date of marriage).

On March 22, 2023, Boldery filed both traditional and no-evidence motions for summary judgment on the issue of whether she and Miller were, or had ever been, informally married. On

May 30, the trial court held a hearing (at which the parties' respective counsel presented argument) and took the matter under advisement. Thereafter, on July 13, the trial court granted Boldery's traditional motion for summary judgment, finding that no informal marriage existed between Boldery and Miller.[1] This appeal followed.

**SUMMARY JUDGMENT EVIDENCE**

Boldery raises several evidentiary issues in her brief that she did not first raise before the trial court. We address her complaint regarding conclusory testimony during our forthcoming discussion of that evidence below. However, Boldery additionally contends that several exhibits presented by Miller in opposition to Boldery's motion for summary judgment were not authenticated and were therefore incompetent to raise a fact issue to prevent rendition of summary judgment. Specifically, she alleges lack of authentication for Miller's exhibits that "purport to be":

> [P]hotographs of individuals, photographs of envelopes, bank statements, a letter from a doctor, an email from an insurance company, a "Will of Joey A. Miller," numerous social media posts, an agreement with an alarm service, an invoice, insurance renewal notices, a letter from an HOA, articles of organization for an entity, a proposal for advertising for a company, and a police report.

Under the summary judgment standard, copies of documents must be authenticated in order to constitute competent summary judgment evidence. *Estate of Guerrero*, 465 S.W.3d 693, 704 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc). A properly sworn affidavit stating that the attached documents are true and correct copies of the original authenticates the copies so they may be considered as summary judgment evidence. *Id*. at 703.

Miller correctly states the rule that depositions (as well as excerpts from depositions) do not require authentication to be valid summary judgment proof. *Klager v. Worthing*, 966 S.W.2d 77, 82 (Tex. App.—San Antonio 1996, writ denied) (citing *McConathy v. McConathy*, 869 S.W.2d 341, 341 (Tex. 1994)). However, the record does not indicate that Miller's other documents were authenticated. Despite Miller's contention to the contrary, his affidavit does not contain a statement that any document submitted therewith (including the copy of his Last Will and Testament) is a true and correct copy, and therefore the affidavit does not serve to authenticate any documents. Regarding Miller's contention that the will was self-authenticated

---

[1] Boldery withdrew her no-evidence motion for summary judgment before the trial court entered any ruling thereon.

2

under Rule 193.7 of the Texas Rules of Civil Procedure, neither the citation Miller provides, nor the remainder of the record, indicates that Boldery produced this document in discovery, as necessary for the rule to apply. *See* TEX. R. CIV. P. 193.7.

Finally, Miller asserts (without citing any authority) that either (1) the remainder of his exhibits were authenticated at the summary judgment hearing, or (2) he attempted to authenticate same at the hearing, which required Boldery to object at that time. Nevertheless, Texas law is clear that a complete absence of authentication is a defect of substance that is not waived by a party failing to object and may be urged for the first time on appeal. ***Blanche v. First Nationwide Mortg. Corp.***, 74 S.W.3d 444, 451 (Tex. App.—Dallas 2002, no pet.). Because the exhibits listed above are not authenticated, we conclude that they are not competent summary judgment evidence and we will not consider them in determining this appeal.

## INFORMAL MARRIAGE

Miller argues that he raised a genuine issue of material fact as to each of the three elements of an informal marriage. Because we conclude that Miller failed to raise a genuine issue of material fact on the first and third elements of an informal marriage, we need not analyze the element of cohabitation. *See* TEX. R. APP. P. 47.1.

### Standard of Review

We review a traditional summary judgment de novo. ***Travelers Ins. Co. v. Joachim***, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. ***Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding***, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. ***20801, Inc. v. Parker***, 249 S.W.3d 392, 399 (Tex. 2008). A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. ***Frost Nat'l Bank v. Fernandez***, 315 S.W.3d 494, 508 (Tex. 2010); *see* TEX. R. CIV. P. 166a(b), (c). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. ***Van v. Peña***, 990 S.W.2d 751, 753 (Tex. 1999).

**Applicable Law**

In Texas, an informal marriage can be proved by evidence establishing three elements: (1) the couple agreed to be married; (2) after the agreement, they lived together in Texas as spouses; and (3) they represented to others that they were married. TEX. FAM. CODE ANN. § 2.401(a)(2) (West 2023); *Nguyen v. Nguyen*, 355 S.W.3d 82, 88–89 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The party seeking to establish the marriage's existence bears the burden of proving the three elements by a preponderance of the evidence. *Nguyen*, 355 S.W.3d at 88 (citing *Weaver v. State*, 855 S.W.2d 116, 120 (Tex. App.—Houston [14th Dist.] 1993, no pet.)). "Until the three elements co-exist, there is no ... marriage." *Winfield v. Renfro*, 821 S.W.2d 640, 648 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (citing *Bolash v. Heid*, 733 S.W.2d 698, 699 (Tex. App.—San Antonio 1987, no writ)).

**Agreement to be Married**

"To establish that the parties agreed to be married, it must be shown that they intended to create an immediate and permanent marriage relationship, not merely a temporary cohabitation that may be ended by either party." *In re O.R.M.*, 559 S.W.3d 738, 744 (Tex. App.—El Paso 2018, no pet.). Further, the agreement must have been to be "presently" married, not to marry sometime in the future. *Rodriguez v. State*, No. 08-16-00118-CR, 2018 WL 3372637, at *15 (Tex. App.—El Paso July 11, 2018, pet. ref'd) (mem. op.). An agreement to be married may be established by direct or circumstantial evidence. *O.R.M.*, 559 S.W.3d at 744.

The testimony of one party that both individuals agreed to be married may constitute some direct evidence that such an agreement occurred. *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Martinez v. Furmanite Am. Inc.*, No. 04-17-00318-CV, 2018 WL 4469973, at *5 (Tex. App.—San Antonio Sept. 19, 2018, pet. denied) (mem. op.) (alleged wife's affidavit statement that she and alleged husband agreed to be married raised fact issue on existence of agreement). However, such testimony must do more than merely paraphrase the statutory language; conclusory testimony that a common-law marriage existed or that the parties held themselves out as married is not sufficient. *Rodriguez*, 2018 WL 3372637 at *15.

In this case, Boldery testified via affidavit that she and Miller discussed the possibility of future marriage during their relationship, but never agreed to be married. Conversely, Miller testified in his own affidavit that

4

> Cathy and I have had an agreement to be married. I would argue that we have had an unspoken agreement since December 2000. We lived together the entire year of 2000 and held ourselves out as married. I am alleging an official date of marriage of December 25, 2001. That is the day that I got down on one knee and asked her to marry me with a wedding ring in hand. She accepted my proposal and we continued to act as married and live together. We have lived together in the State of Texas ever since and even before our agreement to be married. We have held ourselves out to our community and the general public as husband and wife ever since December 25, 2001 as well. We are married in every sense of the word.

Miller's bare statements that he and Boldery "had an agreement to be married" and "are married" are not supported by any specific factual basis and are not competent to raise a genuine issue of fact on the element of agreement to be married.[2] Although Miller describes a specific instance wherein he proposed marriage to Boldery and she accepted, these events do not support an inference that the parties intended to create an "immediate and permanent marriage relationship." *See O.R.M.*, 559 S.W.3d at 744. Instead, at most, Miller's testimony describes a successful marriage proposal—the formation of an "agreement to get married at some point in the future," rather than the creation of an "immediate and permanent" marital relationship. *See Est. of Pandozy*, No. 05-19-00755-CV, 2021 WL 711500, at *5 (Tex. App.—Dallas Feb. 22, 2021, no pet.) (mem. op.).

Although cohabitation and representations to others may constitute circumstantial evidence of an agreement to be married, more is required to prove the parties' agreement to be married, which is a separate statutory requirement that "cannot be inferred from the mere evidence of cohabitation and representations of marriage to others." *Id.*; *see* TEX. FAM. CODE ANN. § 2.401(a)(2). Miller and Boldery do not dispute that they lived together during their romantic relationship; however, "[i]t is difficult to infer an agreement to be married from cohabitation in modern society." *See Pandozy*, 2021 WL 711500 at *5 (citing *Russell v. Russell*, 865 S.W.2d 929, 932 (Tex. 1993)). Thus, evidence of "holding out" must be particularly convincing to be probative of an agreement to be married. *Assoun v. Gustafson*, 493 S.W.3d 156, 160 (Tex. App.—Dallas 2016, pet. denied). As we explain in greater detail *infra*, the compiled evidence of "holding out" herein does not rise to such a level, and we

---

[2] Conclusory declarations are not competent summary judgment proof, but are substantively defective, and an objection thereto may be raised for the first time on appeal. *Seim v. Allstate Texas Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018). To avoid being conclusory, an affidavit must contain specific factual bases, admissible in evidence and upon which conclusions are drawn. *Nichols v. Lightle*, 153 S.W.3d 563, 570 (Tex. App.—Amarillo 2004, pet. denied).

therefore conclude that the circumstantial evidence herein also fails to raise a genuine issue of material fact on whether the parties agreed to be married.

## **Representation of Marriage to Others**

The statutory requirement of representation to others is synonymous with the judicial requirement of "holding out to the public." ***Lee v. Lee***, 981 S.W.2d 903, 906 (Tex. App.—Houston [1st Dist.] 1998, no pet.). This element may be established by the conduct and actions of the parties, rather than spoken words. ***Id.***; ***Mills v. Mest***, 94 S.W.3d 72, 75 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). However, the parties' "isolated references" to each other as husband and wife are not sufficient to establish representation. ***Winfield***, 821 S.W.2d at 651. Whether the couple had a reputation in the community as being married is a significant factor in determining the representation element. ***Small v. McMaster,*** 352 S.W.3d 280, 285 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); ***Smith v. Deneve***, 285 S.W.3d 904, 910 (Tex. App.—Dallas 2009, no pet.) (evidence demonstrating purported spouses "consistently conducted themselves as husband and wife in the public eye" would support finding of informal marriage). Moreover, *both* parties must represent to the public that they are spouses; evidence of representations by only one purported spouse is not sufficient. ***Mills***, 94 S.W.3d at 75; ***Lee***, 981 S.W.2d at 907.

We first note that Miller's statement that he and Boldery "held ourselves out to our community and the general public as husband and wife ever since December 25, 2001" merely repeats the statutory language, is conclusory in nature, and is not competent summary judgment evidence on this element. *See* ***Rodriguez***, 2018 WL 3372637 at *15. Therefore, we look to the remaining record evidence.

In her deposition by written questions, Jaculyn Zigtema, a friend of the parties whose husband attended high school with Miller, answered in the affirmative to the following questions: (1) "Do you understand Joey Miller and Cathy Boldery to be married?" (2) "Have you personally heard Cathy refer to Joey Miller as her husband?" (3) "Have you personally heard Cathy refer to Joey Miller as her spouse?" and (4) "Have you personally heard Joey refer to Cathy has [sic] his wife?" However, Zigtema's responses contain no additional details about any specific instances of such statements, nor did she testify to how often (other than "multiple times") she heard these references. *See* ***Pandozy***, 2021 WL 711500 at *4 (witness's statement that "she always believed that Gonzalez and Pandozy were husband and wife," was conclusory;

6

testimony that witness "heard Pandozy refer to Gonzalez as his wife" deficient when witness "failed to specify when or how often" she heard such references made). The deposition by written questions of Bonnie McPherson (whose relationship to the parties is unspecified, but who states she has known them for "almost two years") contains affirmative answers to the same questions, but again contains no testimony about specific instances of holding out by Boldery or Miller. *See id.* at *6 (purported wife "adduced no evidence of specific instances in which she and/or Pandozy held themselves out as husband and wife and whether such instances were common."). The deposition by written questions of Jose Feliciano (whose relationship to the parties is unspecified, but who states he has known Miller for "20+ years" and Boldery for "17+ years") provides no evidence of holding out at all, as Feliciano merely testifies that Miller's and Boldery's marriage was "always implied," but he never heard either party refer to the other as their spouse.

Teressa Nicholson, a friend of the parties who attended high school with Miller, testified via affidavit about one specific instance wherein Boldery represented to others that she and Miller were married, stating, "In 2004, Joey and I had our 20-year high school reunion. Someone at the reunion asked Catherine, whose wife are you? Cathy responded by saying Joey." Nicholson further testified that "everyone thought" Miller and Boldery were married because they "would always say things like our house, our party, our business, our office." These statements may be indicative of a jointly occupied property or jointly hosted event, but do not necessarily support an inference that the individuals involved are representing themselves as spouses.

Miller also submitted excerpts from the oral depositions of Nate Stallings (another friend of the parties) and Zigtema. Stallings testified that he knew Miller and Boldery were romantically involved, and later engaged. But when asked if he had ever "known them to refer to each other as husband or wife," Stallings responded, "I don't know that I've ever heard them refer to each other," and explained that he knew they were not married because a third party told him so. Moreover, Stallings responded negatively when asked whether he, or anyone he knew, had personal knowledge that "Joey has referred to [Boldery] as his wife or that she has referred to him as her husband."

In Zigtema's oral deposition, she testified in relevant part as follows:

Q. And what is your understanding as to the status of [Miller and Boldery's] relationship?

7

A. At first, they were dating and then engaged. And from probably five years past that, everything they did, or everything I knew, they were a couple.
Q. And a couple as in dating still or engaged still or what?
A. Engaged, married. They represented, both of them, as spouses.
Q. Okay. Have you heard Cathy refer to Joey as "husband"?
A. Yes, at several occasions where we were at different locations or different places. And she was saving a seat for her husband.
…
Q. Have you heard her introduce Joey as husband to anybody?
A. Not -- not specifically, but just in general.
Q. And have you heard Joey refer to Cathy as his wife?
A. Yes.
Q. And can you give some examples of situations?
A. Same type of situations. Out in restaurants or concerts or hotels, or even at their property.
…
Q. And then from 2005 on, did they consistently hold themselves out as husband and wife?
A. Yes. And you didn't see one without the other.

Reading this testimony liberally, Zigtema states twice in a conclusory fashion that Miller and Boldery held themselves out as married and describes (with very little detail) one specific instance where she heard Boldery refer to Miller as her husband. Otherwise, Zigtema's testimony only generally lists places where Zigtema socially interacted with the parties over a period of more than twenty years, and vaguely references "several" unspecified occasions over the same period wherein she heard one party represent that the other party was his or her spouse.

Even if we draw from these statements all the inferences that are reasonable, they are not sufficient to raise a fact issue as to whether Boldery and Miller represented to others that they were married. The non-conclusory record evidence on the element of representation to others does not rise past "isolated references" by either Boldery or Miller to the other as their spouse. *See Winfield*, 821 S.W.2d at 651. Moreover, there is little to no evidence regarding Miller's and Boldery's reputation in the larger community as being married. Nicholson's affidavit states that "everyone" believed Miller and Boldery to be married after the occurrence at the high school reunion, but there is no indication of what group, or how large of a group, "everyone" is meant to describe. *See Deneve*, 285 S.W.3d at 910 (evidence of representation insufficient when couple were introduced as husband and wife, but there was no evidence whether such introductions were common or rare); *In re Est. of Mooney*, No. 01-18-00096-CV, 2019 WL 3917427, at *10 (Tex. App.—Houston [1st Dist.] Aug. 20, 2019, no pet.) (mem. op.) ("Reardon's summary judgment evidence indicates that he and at least one friend viewed him and Mooney to be spouses, but there is no evidence in the summary judgment record concerning their reputation in the larger community for being married."); *Pandozy*, 2021 WL 711500 at *6 (putative wife

failed to "elicit any testimony from family members or friends that she and Pandozy had a reputation in the community for being married"). Instead, all of the testimonial evidence supporting Miller's claim of informal marriage appears to be drawn from the couple's "personal circle of acquaintances," whose testimony can "provide[] little, if any, indication of [the couple's] reputation in the community." *See **Small***, 352 S.W.3d at 285. We conclude that Miller has not raised a fact issue on the third element of an informal marriage—whether the parties represented to others and held themselves out to the public as being married. *See* TEX. FAM. CODE ANN. § 2.401(a)(2); ***Deneve***, 285 S.W.3d at 910 (holding that putative husband "adduced no evidence of the essential element of holding out" and affirming trial court's grant of summary judgment on issue of informal marriage).

Accordingly, we conclude that the trial court correctly granted summary judgment in favor of Boldery and we overrule Miller's sole issue.

### DISPOSITION

Having overruled Miller's sole issue, we ***affirm*** the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered May 8, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 8, 2024**

**NO. 12-23-00230-CV**

**IN THE MATTER OF THE MARRIAGE OF JOEY MILLER AND CATHERINE BOLDERY, ET AL,**
Appellant

Appeal from the County Court at Law
of Smith County, Texas (Tr.Ct.No. 22-0586-E/S)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **Joey Miller** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*